**Patrick Madison BATES, Plaintiff,**

v.

**The VARIABLE ANNUITY LIFE INSURANCE COMPANY and Fred L. Roberts, Defendants.**

**No. Civ.A. 100CV3130MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 29, 2002.

Cary Ichter, Kelly Jean Beard, Gregory Scott Esslinger, Ashutosh S. Joshi, Meadows Ichter & Trigg, Atlanta, GA, for Plaintiff.

Charles K. Howard, Jr., L. Stanford Sherrill, Jr., Erik Christian Johnson, Littler Mendelson, Atlanta, GA, for Defendants.

## ORDER

SHOOB, Senior District Judge.

This action is before the Court on defendants' motions for summary judgment.[1] For the following reasons, the Court grants the motions and dismisses this action.

### Background

Plaintiff Patrick Bates filed this action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., alleging that defendant Variable Annuity Life Insurance Company (VALIC) terminated his employment because of his age and unlawfully retaliated against him. Bates also alleges that VALIC defamed him in an e-mail that stated the reasons for his termination.[2]

Plaintiff began working for VALIC in 1975 selling tax-deferred retirement plans and fixed and variable annuities to employees of educational institutions. Bates continued to work for VALIC for the next 25 years under a series of written contracts. On December 14, 1999, VALIC terminated Bates' contract, effective January 14, 2000. Bates was 58.

According to VALIC, it terminated Bates due to his history of abusive and inappropriate workplace behavior. Specifically, VALIC says it based its decision on three separate incidents that occurred after defendant Roberts became Regional Manager on January 1, 1998, and warned

---

1. Also before the Court is defendant's motion to strike portions of plaintiffs affidavit. It is the practice of this Court not to entertain motions to strike affidavits but to treat such motions as objections and to consider the objections in the course of ruling on the substantive motion. Therefore, the Court denies defendant's motion as moot.

2. Plaintiff also sued VALIC Regional Manager Fred L. Roberts, asserting a claim for tortious interference with contract. Plaintiff has formally withdrawn all claims against Roberts. Therefore, the Court grants defendant Roberts' motion for summary judgment.

Bates in a letter that "I will not tolerate abusive, profane or unprofessional language or conduct in any public area of our offices...."

The first incident involved District Manager Mark King. Bates became "irritated" with King over a recommendation to a client because it meant Bates would receive a lower commission. Bates confronted King as he was leaving a meeting, yelled at King, and told him he did not know what he was doing. King described Bates' tone as "hateful" and said he felt physically threatened and believed that Bates was "on the verge of losing control." One witness to the incident said she was "shocked" by Bates' behavior. Other witnesses described his conduct as "entirely inappropriate" and "unprofessional."

The second incident involved VALIC representative Tim Duffy. Bates became angry because he believed that Duffy had taken a commission to which Bates was entitled. When Duffy tried to explain his actions, Bates got "very loud, started shaking, and became enraged." He began to yell at Duffy, accused him of being unethical, and directed extensive profanity at him. Bates calmed down only after Duffy told him he could have the commission. Both Duffy and the one witness to this incident felt that Bates' behavior was "inappropriate and unprofessional."

The third incident involved VALIC representative Bobby Joiner. Bates became angry with Joiner for sending him e-mails about contacting a client. Bates left Joiner a voice message telling him not to send him any more e-mails but to call instead. When Joiner called, Bates "launched into a string of profanity," told Joiner to stop sending him "Goddamn e-mails," and then hung up on Joiner. When Joiner called back, Bates again yelled at Joiner using profanity, and again he hung up on Joiner. A witness described Bates' tone of voice as "volatile and derogatory" and stated that

he could not "imagine somebody speaking to another human being in that way."

After learning of the incident with Joiner, defendant Roberts discussed the situation with VALIC's Eastern Divisional Manager Tom Lange and, at Lange's request, prepared and sent him a memorandum on November 2, 1999, entitled "Brief Documentation of Aberrant Behavior Relevant to Pat Bates." The memo summarized the King, Duffy, and Joiner incidents, as well as previous similar incidents going back as far as 1983.

After sending his memo to Lange, Roberts received a memorandum from Bates in which Bates recounted the incident with Joiner, as well as Roberts' investigation of the incident. The memo concluded that "during the short time that you have been regional manager, you have repeatedly used any excuse to criticize my performance and these tactics can only be interpreted as harassment and discrimination." Roberts did not share Bates' memo with anyone else at VALIC.

Meanwhile, Lange, Steven Mueller, VALIC's Director of Human Resources, and Rebecca Campbell, VALIC's Senior Vice President for Human Resources, reviewed Roberts' memo regarding Bates. After some further discussion with Roberts, they decided to terminate Bates' contract. Bates was informed of his termination on December 14, 1999.

On December 27, 1999, Lange sent an e-mail to various VALIC managers. The e-mail stated: "Last week a top producing representative was terminated due to abusive behavior (foul and abusive language and/or physical threats towards other representatives and employees). Upper management has confirmed that this type of behavior will not be tolerated, i.e., zero tolerance. Be sure to talk to your representatives and managers. I would hate to lose a good manager or representative be-

cause they were unable to control their emotional outbursts or anger. Please call with any questions."

## Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that this burden could be met if the moving party demonstrates that there is "an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. At that point, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a triable issue. *Id.* at 324, 106 S.Ct. 2548.

In reviewing a motion for summary judgment, the Court must construe the evidence and all inferences drawn from the evidence in the light most favorable to the non-moving party. *WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## Discussion

### I. *Age Discrimination Claim*

VALIC contends that it is entitled to summary judgment on Bates' age discrimination claim for two reasons. First, VALIC argues that Bates is not entitled to relief under the ADEA because he was an independent contractor and not an employee. Second, VALIC contends that, even if Bates were an employee, he was terminated for legitimate, nondiscriminatory rea-

sons, and that Bates has no evidence to suggest that the proffered reasons for his termination were a pretext for age discrimination. In response, Bates argues that there is sufficient evidence to create factual issues regarding both his status as an employee and whether the real reason for his termination was age discrimination.

The Court concludes that the evidence establishes as a matter of law that Bates was an independent contractor and thus not protected by the ADEA. Furthermore, even if Bates were an employee, the evidence establishes as a matter of law that VALIC terminated his employment for legitimate, nondiscriminatory reasons, which were not a pretext for age discrimination. Therefore, VALIC is entitled to summary judgment on Bates' age discrimination claim.

### A. *Independent Contractor*

■ In making this determination, "it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative." *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 341 (11th Cir.1982). Here, the undisputed facts clearly show that Bates was an independent contractor.

■ First, the unmistakable intention of the parties was that Bates was an independent contractor. His 1998 contract, which was the contract in effect when he was terminated, expressly provided that Bates "is an independent contractor for all services performed under this contract." His two previous contracts contained similar language. The fact, cited by Bates, that his initial contract signed in 1975 contained no such provision and sporadically used the words "employed" and "employee" is irrelevant.

Even more significant, the evidence is undisputed that VALIC did not exercise

control over how Bates performed his duties. Bates had complete latitude and discretion in how to service existing clients and how to acquire new business. VALIC exercised no control over how many clients Bates visited or contacted each week, which clients he visited or contacted, or the method by which he dealt with his clients on a day-to-day basis. Bates was free to set his own work schedule and to work whenever he saw fit. Furthermore, Bates was not covered by an employee handbook, any formal written disciplinary procedures, or any formal written rules of conduct, nor did VALIC conduct written evaluations of his performance.

In addition, Bates was not paid a salary but received a commission based on his sales performance. VALIC did not withhold state or federal income taxes from Bates' pay, although it did withhold Social Security and Medicare taxes. VALIC also did not control the amount of vacation Bates took and did not provide him with any official vacation time or vacation pay. Most routine business expenses (except for entertainment expenses), including mileage and fuel, were not reimbursed by VALIC.

It is true, as Bates points out, that VALIC determined Bates' title and had the discretion to set and modify his compensation schedule, as well as to assign and alter Bates' territory. It is also true that VALIC provided Bates with office space, a computer, and proprietary software with which to perform his duties, and that VALIC prohibited Bates from selling or servicing competing products or services during the term of his contract and for a period of one year after its termination. Finally, it is also true that Bates worked exclusively for VALIC for almost 25 years, and that he was a participant in VALIC's pension and retirement plan. Nevertheless, in light of Bates' complete control over the day-to-day performance of his duties and

the parties' clearly expressed intent that Bates be considered an independent contractor, none of these facts, taken either individually or collectively, is sufficient to create a genuine issue for trial as to whether Bates was an employee.

**B. Discrimination**

■ VALIC relies on evidence that it terminated Bates because of a history of abusive and inappropriate workplace behavior, and specifically because of three incidents of such behavior that occurred after he was warned that it would no longer be tolerated. In response, Bates argues that summary judgment is inappropriate because he has submitted both direct evidence of discriminatory intent and evidence that the proffered reasons for his termination were false. Both arguments are without merit.

**1. Direct Evidence**

As purported direct evidence of VALIC's age discrimination, Bates cites evidence that (according to Bates) shows that defendant Roberts "repeatedly suggested that Bates should retire, wrote derisive comments about Bates' age, comparing Bates to Don Quixote, suggested that Bates is so old he started working for VALIC '[w]hen God was a boy, and Moby Dick was a guppy,' and generally regarded 'older' clients as 'cantankerous' and 'problem[s].'" Bates also claims that "just weeks prior to Bates' termination, Defendant Roberts sent an e-mail to upper management wherein he acknowledged his desire to move Bates from his position in order to put 'more active' representatives in the territory." These arguments fail because they are based on distortions of both the facts and the law.

There is no evidence that defendant Roberts "repeatedly suggested that Bates should retire." Bates testified only that

Roberts had told him an unspecified "number of times" that he was looking forward to retirement, and that Bates should be as well. Similarly, in support of his reference to "derisive comments," Bates cites only a single incident where Roberts described him in a memo as having "fought more windmills for no consequence than Don Quixote!" Bates offers no basis for interpreting this comment as disparaging, or even referring to, his age.

Bates also cites Roberts' statement that he had been with VALIC since "God was a boy, and Moby Dick was a guppy." Read in context, however, this comment was nothing more than a joking reply to a question about when Bates began working for VALIC. As such, it clearly referred not to Bates' age but to his tenure with the company.

Bates' claim that Roberts regarded "older" clients as "cantankerous" and a "problem" misrepresents the evidence. What Roberts actually said, in the course of commending Bates' handling of clients, was that Bates "works with a large number of older clients, and is frequently the only person around the office who can deal with some especially cantankerous and 'problem' clients." This statement does not link "older clients" to "cantankerous and problem clients" but describes them as two distinct groups.

Bates also distorts the evidence when he claims that Roberts acknowledged a desire to move Bates from his position in order to put "more active" representatives in the territory. The record shows that it was actually Tom Lange's idea, not Roberts', to consider placing "more active" representa-

tives in Bates' territory. Bates offers no evidence that Lange harbored any age animus whatsoever.

 Finally, even if accurate, none of the comments attributed to Roberts constitutes direct evidence of age discrimination. Direct evidence is evidence that, if believed, proves the existence of discrimination "without inference or presumption." *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir.1998). Direct evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1359 (11th Cir.1999) (emphasis in original). Consequently, " 'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence of discrimination." *Id.* (quoting *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990)). None of the comments cited by Bates even comes close to satisfying this rigorous standard.[3]

### 2. *Pretext*

Apart from the purported direct evidence, Bates argues that he has presented sufficient evidence of pretext to avoid summary judgment. Specifically, Bates contends that the evidence shows that his termination was not based on the three incidents cited by VALIC, but on Roberts' November 2, 1999, memo to Lange, the content of which, Bates claims, "is demonstrably false." This argument fails for three reasons.

---

**3.** Relying on Judge Tjoflat's opinion in *Wright v. Southland Corp.,* 187 F.3d 1287, 1300 (11th Cir.1999), Bates argues that direct evidence is "evidence from which a trier of fact could reasonably find that the defendant more probably than not discriminated against the plaintiff on the basis of a protected personal char-

acteristic." Judge Tjoflat's opinion, however, is not the law of the Eleventh Circuit. Neither of the other two judges on the panel concurred in the opinion, and subsequent decisions have not followed it. *See Copley v. Bax Global, Inc.,* 80 F.Supp.2d 1342, 1348 (S.D.Fla.2000).

First, Bates does not challenge the truth of the three incidents proffered by VALIC as the reason for his termination. Thus, it is undisputed that on three separate occasions Bates engaged in abusive, threatening, and unprofessional workplace behavior after defendant Roberts had warned him in writing that such behavior would no longer be tolerated.

Second, the evidence does not demonstrate that VALIC based its decision to terminate Bates on the memo rather than on the three specific incidents with King, Duffy, and Joiner. Indeed, this distinction makes little sense, because the memo itself includes a summary of the three incidents. In any event, the evidence shows that, while the decisionmakers read Roberts' memo, they also discussed Bates' behavior with Roberts even before the memo was written and discussed his behavior among themselves afterwards, always focusing on the three recent incidents involving King, Duffy, and Joiner.

Finally, contrary to Bates' contention, the content of the November 2 memo is not "demonstrably false." In fact, Bates does not even question the veracity of most of the memo, including its description of the incidents with King, Duffy, and Joiner, as well as its detailed accounting of Bates' history of "extreme profanity," demoralizing and intimidating workplace behavior, and argumentative attitude. Instead, Bates claims that the memo falsely accused him of (1) being "violent" on numerous occasions, (2) fighting in the office with two employees on two separate occasions, (3) "running-off" a number of employees, and (4) stealing documents from his personnel file. Bates, however, has failed to demonstrate that these accusations were false.

First, "violent" behavior is not limited to physical attacks, as Bates appears to contend, but includes behavior that is "notably furious or vehement" or "excited or mentally disordered to the point of loss of self-control." *Webster's New Collegiate Dictionary* (1979). The undisputed facts show a substantial amount of behavior on the part of Bates that fits that definition.

Second, although the employees with whom Bates allegedly fought deny that the fights occurred, there is no evidence that Roberts fabricated these incidents in order to bolster the case for terminating Bates. Another employee claimed to have witnessed one of the fights, and Roberts merely relied on that eyewitness's report. Roberts himself claimed to have witnessed the other fight, and he reported it to management shortly after it occurred, in 1983. To say the least, it strains credulity to suggest that Roberts lied in 1983 about witnessing a fight in the hope that one day it could be used as an excuse for terminating Bates. It is even more inconceivable that this plot was hatched sixteen years before the memo because of age animus.

Third, the evidence supports Roberts' claim in the memo that Bates had "effectively 'run-off' working partners in his territory for over 20 years, including Cynthia Wilkinson, Eddie Dover, Chris Ervin, Leslie Riley and Mark King." Wilkinson, Dover, Ervin, and King each testified to frequent heated confrontations with Bates during which he yelled and used extensive profanity, and each testified that the desire to avoid working with Bates was a significant factor in their decision either to leave the company or to work in another territory.

Finally, Roberts testified that he based his allegation that Bates' had removed documents from his personnel file on the statement of a prior Regional Manager, George Downing. Bates does not deny this allegation, nor does he point to any evidence that would show that it is false.

## II. *Retaliation Claim*

■ Since the Court has already determined that Bates was an independent contractor rather than an employee, and thus not protected by the ADEA, his retaliation claim, like his discrimination claim, must fail regardless of its merits. Furthermore, even if Bates were able to show that he was an employee of VALIC, there is still insufficient evidence to make out a retaliation claim.

■ To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relationship between the two events. *See Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). Bates claims that he engaged in protected expression when he wrote a memo to defendant Roberts on November 5, 1999, stating that he felt Roberts' treatment of him was the result of age discrimination. Bates argues that the requisite causal relationship between the memo and his termination is supported by evidence that Roberts gave the go-ahead to terminate Bates after he received the November 5 memo. VALIC argues that the causation element is missing because the process that led to Bates' termination was initiated before he wrote the memo, and because the ultimate decisionmakers were not even aware of the memo.

The Court concludes that there is no evidence to support the existence of any causal connection between Bates' memo and his termination. Therefore, Bates has failed to make out a prima facie case of retaliation.

First, it is undisputed that before Bates wrote his November 5 memo, Roberts had already written his November 2 memo to Tom Lange, which recommended disciplinary action against Bates and ultimately led to the decision to terminate his contract.

Thus, it is undisputed that VALIC was contemplating Bates' termination before Roberts received the November 5 memo. As such, there can be no causal connection between Bates' memo and VALIC's decision to terminate him. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (After learning of protected activity, an employer's "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality").

Second, the undisputed facts demonstrate that the persons who made the ultimate decision to terminate Bates' contract never knew about his November 5 memo to Roberts. There is no evidence to support Bates' contention that the decision to terminate him was "cleared" through Roberts, or that Roberts gave the "go-ahead" to terminate. To the contrary, the undisputed evidence shows that the decision to terminate was made by Lange, Mueller, and Campbell, and that Mueller only notified Roberts of their decision and asked him if he agreed with it. There is no evidence to suggest that Roberts' approval of the decision was required.

Finally, even if Bates could establish a prima facie case of retaliation, VALIC would nevertheless be entitled to summary judgment because, as discussed above, it has demonstrated that it terminated Bates' contract for legitimate, nondiscriminatory reasons, and Bates has failed to "raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory motive." *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997).

## III. *Defamation Claim*

■ Bates brings a defamation claim against VALIC based on the e-mail sent by Lange to a number of VALIC managers two weeks after Bates was notified of

his termination. In pertinent part, the e-mail stated: "Last week a top producing representative was terminated due to abusive behavior foul and abusive language and/or physical threats towards other representatives and employees." VALIC contends that this claim fails as a matter of law because the e-mail (1) was not published, (2) was privileged, (3) was not sent for malicious purposes, and (4) was truthful. The Court agrees. Therefore, VALIC is entitled to summary judgment on this claim as well.

First, it is undisputed that Lange sent the e-mail only to corporate managers who had a reason to receive the information, and it is well established that such communications among corporate agents are not considered to be "published." *Kurtz v. Williams*, 188 Ga.App. 14, 15, 371 S.E.2d 878 (1988). Second, the e-mail was privileged because the evidence shows that it was sent in good faith, in an effort to uphold VALIC's legitimate business interests, was properly limited in scope, and was sent on a proper occasion and only to appropriate persons. O.C.G.A. § 51–5–7(3); *Davis v. Sherwin–Williams Co.*, 242 Ga.App. 907, 908, 531 S.E.2d 764 (2000). Third, in order to overcome the privilege, Bates must show that the e-mail was sent with "actual malice," *Kitfield v. Henderson, Black & Greene*, 231 Ga.App. 130, 132, 498 S.E.2d 537 (1998); and the evidence does not support such a finding. Fourth, and finally, as discussed above, the evidence shows that the e-mail was truthful.

### Summary

For the foregoing reasons, the Court GRANTS defendant Fred L. Roberts' motion for summary judgment [# 15–1]; GRANTS defendant Variable Annuity Life Insurance Company's motion for summary judgment [# 16–1]; DENIES AS MOOT defendant's motion to strike portions of plaintiff's affidavit [# 31–1]; and DISMISSES this action.[4]

---

4. Both defendants have requested an award of costs and attorney's fees. A bill of costs and a motion for attorney's fees should be filed within thirty (30) days after the entry of judgment. *See* Local Rule 54.