**Ann Marie IOSA, Plaintiff,**

v.

**GENTIVA HEALTH SERVICES, INC., Defendant.**

**No. 3:03 CV 1538(GLG).**

United States District Court, D. Connecticut.

Jan. 12, 2004.

Peter D. Goselin, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT, for Plaintiff.

Daniel Schwartz, Day, Berry & Howard, Stamford, CT, Jennifer L. Sachs, Day, Berry & Howard, Stamford, CT, for Defendant.

### Memorandum Decision

GOETTEL, District Judge.

Plaintiff, ANN MARIE IOSA, has filed a multi-count complaint against her former employer Defendant, GENTIVA HEALTH SERVICES, INC., asserting various claims arising out of the termination of her employment by Defendant. Defendant now moves this Court to dismiss [Doc. # 7] counts two, three, and four of Plaintiff's complaint for failure to state a claim upon which relief may be granted. Rule 12(b)(6), Fed.R.Civ.P. As discussed below, Defendant's motion to dismiss will be granted.

### Motion to Dismiss Standard

The function of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to assess the legal sufficiency of the complaint. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). Thus, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

A motion to dismiss should not be granted for failure to state a claim unless is

appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). In ruling on a motion to dismiss, the Court is limited to the facts set forth in the complaint, any documents attached thereto or incorporated by reference, and matters of which the Court may take judicial notice. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088, 1092 (2d Cir.1995); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Accordingly, the facts set forth below are taken directly from Plaintiff's complaint.

### Plaintiff's Allegations

In March 2002, Plaintiff was hired as an account representative for Defendant's Connecticut territory. (Compl. at ¶ 3.) During her employment, her performance met or exceeded the minimum requirements of the job. (*Id.* at ¶ 4.) From the time of her hire until January 2003, Defendant consistently praised her performance and never disciplined her. (*Id.* at ¶¶ 5–6.)

In mid-January, Plaintiff complained to her supervisor, Josie McQuay, about Defendant's failure to properly reimburse her for work-related expenses. When Plaintiff was unable to resolve this problem through McQuay, she contacted Defendant's human resources department. (*Id.* at ¶ 7.) This angered McQuay, who accused Plaintiff of "going over [her] head." (*Id.* at ¶ 8.)

About the same time, Plaintiff requested that McQuay provide her with a list of physicians approved by Defendant's worker's compensation carrier because Plaintiff needed treatment for a work-related injury, the details of which are not revealed in the complaint. (*Id.* at ¶ 9.) Plaintiff had to request this information several times before McQuay responded. (*Id.*) As a result of this work-related injury, Plaintiff was placed on light duty by her treating physician for a period of three weeks. (*Id.* at ¶ 10.)

On January 31, 2003, McQuay placed Plaintiff on a "performance improvement plan." In a memorandum, which is not attached to the complaint, McQuay stated that there were "serious concerns" about Plaintiff's performance and "further alleged that Plaintiff had falsified expense reports." (*Id.* at ¶ 11.) Plaintiff asserts that these allegations were false and were known by McQuay to be false and were made for the purpose of harming Plaintiff's reputation. (*Id.* at ¶¶ 12, 13.) Copies of this memorandum were placed in Plaintiff's personnel file and/or disseminated to other employees of Defendant. (*Id.* at ¶ 14.)

On March 6, 2003, McQuay spent the day with Plaintiff, accompanying her on her sales calls. At lunch, McQuay attempted to discipline Plaintiff at a public place within earshot of others. (*Id.* at ¶ 15.) Plaintiff told McQuay that she was offended and humiliated by this treatment and left the restaurant. (*Id.* at ¶ 16.) Following this incident, Defendant terminated Plaintiff allegedly because of the performance improvement plan and the restaurant incident, in which McQuay accused Plaintiff of behaving inappropriately. (*Id.* at ¶ 17.)

In the first count, Plaintiff alleges that the exercise of her rights under the worker's compensation statute was a factor in Defendant's decisions to place her on a performance improvement plan, discipline her, and terminate her employment, in violation of the anti-retaliation provisions of the Worker's Compensation Act, Conn. Gen.Stat. § 31–290a. (*Id.* at ¶ 19.) In the second count, Plaintiff claims that her ter-

mination was in retaliation for her internal complaint that she had not been properly reimbursed for employment-related expenses, which breached a covenant of good faith and fair dealing implied in her employment contract. (*Id.* at ¶¶ 23–24.) Plaintiff asserts in count three that her termination was contrary to clearly established public policy. (*Id.* at ¶ 26.) Finally, in count four, Plaintiff contends that Defendant's conduct constituted defamation *per quod* and/or defamation *per se.* (*Id.* at ¶ 28.)

### Discussion

Although Defendant vigorously contests the factual predicate for Plaintiff's claim of worker's compensation retaliation, it concedes the Plaintiff has adequately alleged a violation of Conn. Gen.Stat. § 31–290a so as to withstand a motion to dismiss. However, as to the remaining counts, Defendant argues that the availability of a remedy for retaliation under the worker's compensation statute precludes Plaintiff, as a matter of law, from recasting her claim as one for wrongful discharge, whether in tort or contract. Moreover, even if Plaintiff did not have this statutory remedy available to her, Defendant asserts that her factual claims cannot support a wrongful discharge action given her status as at-will employee. Lastly, Defendant maintains that Plaintiff has failed to set forth the necessary elements of a cause of action for defamation.

### I. Whether the Availability of a Statutory Remedy for Retaliation Precludes a Common–Law Claim for Wrongful Discharge

Initially, Defendant argues that Plaintiff's wrongful discharge claims in counts two and three must be dismissed because Plaintiff has available to her an adequate remedy under the worker's compensation statute for retaliation. This Court has dismissed other wrongful discharge claims bought under the auspices of *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 474, 427 A.2d 385 (1980), because the plaintiff had other statutory remedies available. *See Dallaire v. Litchfield County Ass'n for Retarded Citizens, Inc.,* No. 3:00CV01144(GLG), 2001 WL 237213 (D.Conn. Feb.12, 2001); *Carvalho v. International Bridge & Iron Co.,* No. 3:99CV605(PCD), 2000 WL 306456, at **6, 7 (D.Conn. Feb.25, 2000); *Venterina v. Cummings & Lockwood,* 117 F.Supp.2d 114, 118–19 (D.Conn.1999).

In *Atkins v. Bridgeport Hydraulic Co.,* 5 Conn.App. 643, 648, 501 A.2d 1223, 1226 (1985), the Connecticut Court of Appeals held:

> A finding that certain conduct contravenes public policy in not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.

*See also Burnham v. Karl and Gelb, P.C.,* 252 Conn. 153, 160–63, 745 A.2d 178 (2000); *Carvalho,* 2000 WL 306456, at *6 (citing cases where a wrongful discharge claim has been dismissed because the plaintiff had an adequate statutory remedy); *Contois v. Carmen Anthony Restaurant Group, LLC,* No. CV000160287, 2001 WL 195396, at *2 (Conn.Super.Ct. Feb.2, 2001). Generally, however, those cases have involved claims where the only public policy allegedly violated was embodied in the very statute under which another claim had been raised or could have been raised.

■ In this case, in addition to alleging retaliation under the worker's compensation statute, Plaintiff has asserted that Defendant's termination of her employment violated the "important public policy" that "an employee be permitted to complain to her employer regarding the employer's failure to properly compensate or reimburse the employee for services performed or expenses incurred in pursuit of said services, without fear of retaliation." (Compl. at ¶ 22.) Although Plaintiff has asserted a statutory claim under Conn. Gen.Stat. § 31–290a, that claim does not embrace all of the public policy arguments raised in her wrongful discharge counts. *See Kennedy v. Coca–Cola Bottling Co.,* 170 F.Supp.2d 294, 300–01 (D.Conn.2001). Accordingly, Defendant's motion to dismiss is denied on this ground.[1]

## II. Whether Counts Two and Three Should Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted

Plaintiff, an employee at will,[2] has asserted two claims for wrongful discharge— *i.e.*, that her termination breached an implied covenant of good faith and fair dealing, and that her termination violated an important public policy. Defendant argues that both of these claims must be dismissed because Plaintiff has failed to allege facts that would support a claim for wrongful discharge under either theory.

■ The traditional rule in Connecticut governing employment at will contracts of permanent employment, or employment for an indefinite term, is that such contract are terminable at the will of either party without regard to cause. *Coelho v. Posi-Seal Internat'l, Inc.,* 208 Conn. 106, 117–18, 544 A.2d 170 (1988). In a very recent decision by the Connecticut Supreme Court, *Cweklinsky v. Mobil Chemical Co.,* No. 16846, 2003 WL 23019184 (Conn. Jan. 6, 2004), the Court reiterated its adherence to the "well established doctrine of employment at will."

> In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary. Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability.... Consequently, in the absence of an employment contract, or an illegal discriminatory motive, an employer has the right to terminate an employee at any time without liability.

*Id.* (quoting *Thibodeau,* 260 Conn. at 697–98, 802 A.2d 731) (internal citations and quotation marks omitted).

■ Although the Connecticut Supreme Court has recognized an exception to the at-will employment doctrine where the reason for the employee's termination violated an important public policy, *see Sheets*

---

1. The Court notes that Plaintiff has incorporated into counts two and three all of the preceding paragraphs of her complaint. To the extent that she seeks to rely on the public policy of prohibiting employers from retaliating against employees who exercise their rights under the worker's compensation statutes, those wrongful discharge claims would be barred because Plaintiff has an adequate statutory remedy under Conn. Gen.Stat. § 31–290a. *See Menard v. People's Bank,* No. CV970544627S, 1998 WL 177536, at *2 (Conn.Super. Apr.6, 1998).

2. "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary." *Thibodeau v. Design Group One Architects, LLC,* 260 Conn. 691, 697, 802 A.2d 731 (2002) (internal citations and quotation marks omitted). Although Plaintiff does not characterize her employment as "at-will," no contract to the contrary has been alleged, and Plaintiff has not disputed Defendant's assertion that she was an at-will employee.

*v. Teddy's Frosted Foods,* 179 Conn. at 476, 427 A.2d 385, the Court has repeatedly emphasized the narrowness of the exception.

> In interpreting this exception, we note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . .

*Burnham,* 252 Conn. at 159, 745 A.2d 178 (internal citations and quotation marks omitted); *see also Thibodeau,* 260 Conn. at 701, 802 A.2d 731 (noting that the Court has rejected claims of wrongful discharge that· have not been predicated upon an employer's violation of "an important and clearly articulated public policy"). Therefore, an employee who claims that his or her termination violated public policy bears a heavy burden or proving of violation of "an *important* public policy." *Cimochowski v. Hartford Public Schools,* 261 Conn. 287, 306, 802 A.2d 800 (2002) (original emphasis); *see also Morris v. Hartford Courant Co.,* 200 Conn. 676, 679 & n. 2, 513 A.2d 66 (1986).

In count two Plaintiff alleges that Defendant breached an implied covenant of good faith and fair dealing when it terminated her. The Connecticut Supreme Court has recognized that every contract carries with it an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. *Habetz v. Condon,* 224 Conn. 231, 238, 618 A.2d 501 (1992). "The implied covenant of good faith and fair dealing operates to 'fulfill the reasonable expectations of the contracting parties as they presumably intended.'" *Rose v. James River Paper Co.,* 2 F.Supp.2d 245, 255 (D.Conn.1998) (quoting *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 567, 479 A.2d 781 (1984)).

█ An employee can bring a cause of action for breach of an implied covenant of good faith and fair dealing in an employment contract even if the employment is at-will. *Magnan,* 193 Conn. at 568–72, 479 A.2d 781. To establish such a claim when the employment is at-will, an employee must establish that his or her termination was for a demonstrably improper reason, the impropriety of which is derived from a violation of some important public policy. *Rose,* 2 F.Supp.2d at 254. Thus, in cases such as this, where the breach of implied covenant claim is based on the same public policy violation as the wrongful discharge tort claim, the courts have treated the two claims as contemporaneous and co-extensive and, thus, have considered them together. *See Jarrett v. Community Renewal Team, Inc.,* No. CV020816341S, 2003 WL 1962835, at *1 (Conn.Super.Ct. Apr.3, 2003); *Contois,* 2001 WL 195396, at *3. The decisive issue with respect to both counts is whether the allegations of the complaint are sufficient to support a claim that the plaintiff's discharge was in violation of an important and clearly articulated public policy. *See Thibodeau,* 260 Conn. at 701, 802 A.2d 731.

█ In this case, the public policy allegedly implicated is the right of an employee to complain to an employer about improper reimbursement of work-related expenses without fear of retaliation.[3] "In evaluating [such] claims, [we] look to see whether the plaintiff has . . . alleged that

---

**3.** Although Plaintiff has alleged a broader public policy involving an employee's right to complain about improper compensation, Plaintiff has not alleged that she ever made such complaints or that her compensation was in any way improper or incorrect. Her only allegation is that she complained "about the Defendant's failure to properly reimburse her for work-related expenses that she had incurred." (Compl. at ¶ 7.)

his [or her] discharge violated any explicit statutory or constitutional provision ... or whether he [or she] alleged that his [or her] dismissal contravened any judicially conceived notion of public policy." *Thibodeau*, 260 Conn. at 698–99, 802 A.2d 731.

Here, Plaintiff has not alleged a violation of any explicit statutory or constitutional provision. Therefore, the sufficiency of Plaintiff's second and third counts depends on whether Plaintiff has alleged that her termination contravened any judicially conceived notion of public policy. Plaintiff has not pointed to any judicial precedent that recognizes the right of an employee to complain about improper expense reimbursements, and we find no precedent that would warrant treating this alleged "right" as sufficiently important to carve out another exception to the employment at-will doctrine. The Connecticut Supreme Court has cautioned that "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." *Parsons v. United Technologies Corp.*, 243 Conn. 66, 79, 700 A.2d 655 (1997).

Indeed, in cases far more compelling than this one, the Connecticut courts have refused to expand the "public policy exception" to the employment at-will doctrine. *See, e.g., Thibodeau*, 260 Conn. at 694, 802 A.2d 731 (holding that a common-law claim for wrongful discharge will not lie against employers with less than three employees, thus not covered by Connecticut's Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60, who discharge their employees on the basis of pregnancy); *Daley v. Aetna Life & Casualty Co.*, 249 Conn. 766, 734 A.2d 112 (1999) (refusing to extend the public policy embodied in the state and federal Family and Medical Leave Acts to require an employer to accommodate a parent's work-at-home requests and, thus, dismissing plaintiff's

wrongful discharge claim based on a violation of this alleged public policy); *Burnham*, 252 Conn. at 160, 745 A.2d 178 (refusing to extend the protections of the state whistleblower statute, Conn. Gen. Stat. § 31–51m, to an employee who was terminated for reporting defendants' unsafe dental practices to a dental association, because the dental association was not a "public body" under § 31–51m(b) and, therefore, dismissing plaintiff's wrongful discharge claim based on this public policy); *Morris v. Hartford Courant*, 200 Conn. 676, 680, 513 A.2d 66 (1986) (holding that a false but negligently made accusation of criminal conduct as a basis for dismissal was not a "demonstrably improper reason" when the employer was not statutorily obligated to investigate the veracity of the allegation); *Jarrett*, 2003 WL 1962835 (refusing to extend the public policies of the state Family and Medical Leave Act to cover a discharge that was not a prohibited act enumerated under Conn. Gen.Stat. § 31–51pp, nor a violation of the leave policy under Conn. Gen.Stat. § 31–5111).

Therefore, because we find that Plaintiff has failed to allege that her termination violated a public policy that is sufficiently important to carve out an exception to the employment at-will doctrine, we grant Defendant's motion to dismiss counts two and three for failure to state a claim.

### III. Whether Plaintiff Has Set Forth a Claim for Defamation

Plaintiff's fourth count asserts a claim for defamation arising out of McQuay's memorandum regarding the performance improvement plan, which stated that there were "serious concerns" about Plaintiff's performance and that Plaintiff had falsified expense reports. Plaintiff alleges that McQuay knew the statements were false, that she made the statements for the purpose of harming Plaintiff's reputation, and

that copies of the memorandum were placed in Plaintiff's personnel file and/or disseminated to other employees. (Compl. at ¶¶ 11–14.) She also alleges that McQuay attempted to discipline her in a public restaurant in the presence of other customers, which made her feel humiliated and offended. (*Id.* at ¶¶ 15–16.)

■ Although Plaintiff has not attached a copy of the McQuay memorandum to her complaint, Defendant has provided it as an attachment to its motion to dismiss. Although normally we are limited to the allegations of the complaint and documents attached thereto in ruling on a motion to dismiss, we may consider the memorandum in this instance because it forms the basis for Plaintiff's defamation claim. "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which [she] solely relies and which is integral to the complaint," the Court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

The memorandum on which Plaintiff relies is a garden-variety performance memorandum from a supervisor to an employee with copies to other management personnel. The memorandum states:

Pursuant to our Team Meeting on December 18, 2002 and previous discussions with you, there are serious concerns regarding your performance as it relates to call reporting and lack of timeliness with you assignments. These concerns about your performance reflect in your role as an Account Executive with Gentiva Health Services.

The memorandum then details the problems with Plaintiff's untimely and incomplete reports, or reports that were never received.

With respect to Plaintiff's expense reports, the memorandum states

I have had to correct several of your mistakes on your expense reports regarding your mileage and your overall total when adding up your sub-total line to your grand total line.

On one occasion you submitted a mileage total of 362 miles to Waterbury CT. As I reviewed prior miles submitted to Waterbury CT.—you submitted 73 miles on prior reports. When I asked you about this error—you said "Oh change it"[.]

On another expense report, you submitted expenses for an additional $200.00 in expenses that were not incurred. When I asked you about this, your reply was "oh it must have been an oversight"[.]

The memorandum then discusses the specifics of the 30–day performance improvement plan and the need for Plaintiff to improve her performance and address McQuay's concerns.

■ Under Connecticut law, a defamatory statement is defined as a communication that tends to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . ." *QSP, Inc. v. Aetna Casualty & Surety Co.,* 256 Conn. 343, 356, 773 A.2d 906 (2001) (quoting *3 Restatement (Second) Torts* § 559 at 156 (1977)) (internal quotation marks omitted). To establish a prima facie case of defamation, a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered

injury as a result of the statement. *Id.;* W. Prosser & W. Keeton, *Torts* § 113 at 802 (5th ed.1984); *see also Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 27, 662 A.2d 89 (1995) (holding that in order to state a claim for defamation, a plaintiff must allege that the defendant published false statements that harmed the plaintiff and that the defendant was not privileged to do so).

The memorandum from McQuay to Plaintiff is not defamatory. The statement that there were "serious concerns" about Plaintiff's performance is an opinion by McQuay about the adequacy of Plaintiff's work. "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich v. Waterbury Republican–American, Inc.,* 188 Conn. 107, 111, 448 A.2d 1317 (1982) (internal citations and quotation marks omitted). Clearly, this was an expression of McQuay's opinion about Plaintiff's performance. Expressions of opinion cannot as a matter of law be defamatory. *See Perruccio v. Arseneault,* 7 Conn.App. 389, 394, 508 A.2d 831 (1986); *Torok v. Proof,* No. CV 90 0113204, 1993 WL 28878, at *2 (Conn.Super. Feb.1, 1993). Moreover, even if this statement by McQuay could be considered a statement of fact, Plaintiff cannot prove that this statement was untrue for the memorandum itself supports the statement that there were concerns.

With respect to Plaintiff's allegation that McQuay accused her of falsifying her expense reports, the memorandum itself negates this claim. In the memorandum McQuay never accused Plaintiff of falsifying expense reports. Instead, McQuay merely set forth errors that Plaintiff had made in her expense reports, which, with Plaintiff's acquiescence, were corrected. There can be no claim of defamation in the absence of a false statement of fact.

Last, to the extent that Plaintiff relies on McQuay's attempted discipline of Plaintiff in a public place in the presence of other customers to support her claim for defamation, Plaintiff has failed to identify any specific defamatory statements made by McQuay and has further failed to allege that her reputation was damaged in any way by the attempted discipline. *See Johnson v. Chesebrough–Pond's USA Co.,* 918 F.Supp. 543, 551 (D.Conn.), *aff'd,* 104 F.3d 355, 1996 WL 734043 (2d Cir.1996). These allegations do not support a claim for defamation.

Accordingly, Plaintiff's defamation claim set forth in the fourth count is dismissed.

### Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss Counts Two, Three, and Four [Doc. # 7] is GRANTED.

**SO ORDERED.**