A04A1858. McCLESKY v. THE HOME DEPOT, INC. et al.

(612 SE2d 617)

ADAMS, Judge.

The following facts underlying this appeal have previously been set out in *McClesky v. Vericon Resources,* 264 Ga. App. 31 (589 SE2d 854) (2003) as follows:

> [Paul] McClesky applied for employment with Home Depot in August 1999. In his employment application, McClesky indicated that he had *not* been convicted of a felony or misdemeanor within the past five years. Home Depot hired McClesky.
>
> As part of the hiring process, McClesky signed a consent form, permitting Home Depot and its agent to perform a background check. This consent form provided, in pertinent part, that McClesky "release[d] Home Depot and/or its agents and any person or entity, which provides information pursuant to this authorization, from any and all liabilities, claims or lawsuits in regard to the information obtained from any and all of the above referenced sources used."
>
> In October 2000, Home Depot requested that Vericon conduct a criminal background search on McClesky.[1] A third party actually conducted the investigation. After receiving the report, Vericon faxed the results of the investigation to Home Depot on November 13, 2000. The report suggested that McClesky had used the name Edward James Sims, Jr. as an alias and that Sims had been convicted for several

---

[1] Vericon's initial background check revealed "No conviction record was found." Home Depot requested that Vericon perform a more thorough background check after McClesky remarked to William Gonzalez, an assistant store manager and one of the appellees in this appeal, that he had served time in prison.

crimes in 1998.[2] On November 16, 2000, Home Depot terminated McClesky for falsifying his employment application.

On November 14, 2001, McClesky sued Home Depot [and] several of its employees [appellees in the present appeal, and] Vericon, alleging, inter alia, claims for negligence, defamation, libel, and slander. According to McClesky, he never used Edward James Sims as an alias and did not commit the crimes referred to in the report. Vericon moved for summary judgment, asserting that the release McClesky signed barred the suit. Vericon also asserted that the libel, slander, and defamation claims were not filed within the statute of limitation. The trial court agreed and granted Vericon's motion, and [we affirmed the grant of summary judgment to Vericon on appeal].

(Footnotes omitted; emphasis in original.) Id. at 31-32.

The remaining defendants, Home Depot and its employees William Gonzalez and Carla Brown,[3] also moved for summary judgment. The trial court granted their motion, and the present appeal followed.

1. McClesky contends that the trial court erred in granting summary judgment to defendants on his claims for libel and slander, asserting that the release did not bar these claims because defendants were grossly negligent and acted with malice. In addition to the facts set forth in *Vericon*, the following are pertinent to the resolution of these contentions: McClesky was terminated at a meeting attended by Ricky Jordan, the manager at the store where McClesky worked, William Gonzalez, an assistant manager in the lumber area where McClesky worked, and Carla Brown, a Home Depot loss prevention supervisor. Jordan, as the store manager, had the responsibility for terminating employees at that Home Depot store and organized the meeting.

During the meeting, Jordan informed McClesky that he was being terminated for falsifying his employment application when he stated he had not been convicted of a felony in the past five years. McClesky denied that he had been convicted of a felony during that time, although he admitted being on probation for a crime committed outside the five-year period. Brown then listed the crimes on the

---

[2] The crimes listed on the report as having been committed by Sims included false imprisonment, terroristic threats, cruelty to children (reduced to battery), and simple battery.

[3] McClesky named Ricky Jordan as a defendant in his complaint, but Jordan is no longer an employee with Home Depot, and apparently was never served with the complaint.

background report[4] that Sims was reported to have committed within the last five years. McClesky denied having committed those crimes, and said the report was in error. McClesky was nevertheless terminated and given separation paperwork showing that he was being terminated for falsification of company records. McClesky testified in his deposition that he was escorted from the meeting and the premises by a man wearing a Home Depot shirt who was also in attendance at the meeting. According to McClesky, that man did not work at the Home Depot store where he worked. Although Gonzalez recalled that another person was in the meeting, he testified in his deposition that he did not know this person, and could not recall if he took part in any of the discussions with McClesky. Gonzalez subsequently filed an affidavit stating that although it was still his testimony that he did not know the other person who attended the meeting, he could identify the person as working in the Home Depot loss prevention department.[5] Gonzalez also averred that it was not unusual to have personnel from that department attend termination meetings when there were issues concerning employee falsification or security.[6]

After the meeting, Jordan, Gonzalez and Brown stayed behind to discuss the meeting and Brown told the other two that they should respond to inquiries from other store employees about McClesky's termination by saying that he was "no longer with us and leave it at that."

Based on these facts, the trial court found, inter alia, that summary judgment for defendants was appropriate because the evidence showed there had been no publication within the meaning of OCGA § 51-5-1 (b). We agree.

> Publication is indispensable to recover for slander. Generally, publication is accomplished by communication of the slander to anyone other than the person slandered. Over the years, however, an exception to the broad definition of

---

[4] Although the crime listed on the background report was "child abuse" it appears that it was stated on several occasions that the crime was "child molestation."

[5] Although the trial court did not directly address this issue, we note that sworn statements are considered inconsistent or contradictory only if one part of the testimony asserts or expresses the opposite of another part of the testimony.

> To constitute a self-contradiction it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done.

(Citations, punctuation and emphasis omitted.) *Hightower v. State*, 227 Ga. App. 74, 77 (487 SE2d 646) (1997).

[6] Brown did not recall anyone else being in the meeting.

> publication has evolved: when the communication is intra-corporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive information, there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander.

(Citations omitted.) *Galardi v. Steele-Inman*, 266 Ga. App. 515, 519 (2) (597 SE2d 571) (2004). Thus, the relevant question is whether, because of their duty or authority, the persons attending the termination meeting had reason to receive the information disseminated during that meeting. *Terrell v. Holmes*, 226 Ga. App. 341, 343 (1) (487 SE2d 6) (1997). It is clear that Jordan, Gonzalez and Brown had such authority, and McClesky does not contend otherwise. McClesky, however, focuses on the presence of the other Home Depot employee who has never been identified by name. However, that person was identified as a Home Depot loss prevention supervisor and evidence was presented that personnel from that department attend termination meetings when issues relating to employee falsification or security are of concern, such as was the situation here. And McClesky's own testimony establishes that this person was there for security reasons since he escorted McClesky off the premises once the meeting ended and McClesky had been terminated. The fact that, as McClesky repeatedly points out in his brief on appeal, this person did not work at the Home Depot store where McClesky worked does nothing to advance McClesky's argument that the person did not have the requisite authority to receive the information. Brown was also a loss prevention supervisor who did not work in the store where McClesky was employed, and yet her authority to attend the meeting is not disputed. The trial court did not err in granting summary judgment on this basis.

2. McClesky also contends summary judgment to the defendants was precluded because the facts show that Jordan and Gonzalez told Home Depot employee Jonathon Erhorn that McClesky was terminated for giving false information on his employment application and that he had committed a felony — child molestation. The record shows that Erhorn was a friend of McClesky's and they worked in the lumber department together. Although Erhorn testified in his deposition that he "never really considered [him]self as a supervisor" and that he "was just a lumber associate that was curious and asked a question" he also testified that he acted as the "lead lumber person" or "back up supervisor" and was "second in charge behind [the lumber department supervisor] Greg Simon." The record also shows that Erhorn was told about the circumstances surrounding McClesky's termination only after he questioned Gonzalez about McClesky's

absence. According to Erhorn, he initially questioned Gonzalez because McClesky was scheduled to come in at a critical time. Gonzalez at first told Erhorn simply that McClesky had been terminated and that he could not tell him why. Erhorn let it drop at that time, but then called Gonzalez later in the day because "I really wanted to know why he left . . . why he was fired. He was a hard worker, and I don't see how he could have got fired." At that time Gonzalez instructed Erhorn to come to the conference room, and both Jordan and Gonzalez were there when he arrived. Jordan told Erhorn that "whatever was said in that room [had to] stay in that room," and Gonzalez told Erhorn that McClesky was fired because he had been convicted of a felony — child molestation. Erhorn testified in his deposition that he felt like Jordan was trying to act as a mediator during the meeting and that "Jordan[ ] didn't want me to leave Home Depot just because whenever [McClesky] leaves is going to put more work on [me] and Greg Simon." Erhorn also testified that he talked to McClesky several weeks later and that McClesky "told [him] the exact thing that [Gonzalez] told [him] . . . that he was fired from Home Depot because he had a prior conviction of child molestation."

Pretermitting whether summary judgment was proper because the statements were unpublished under the same reasoning as that set forth in Division 1, we agree that summary judgment was proper for the additional reason stated by the trial court.

OCGA § 51-5-7 provides that statements made in the good faith performance of a public or private duty are privileged, unless, as provided in OCGA § 51-5-9, "the privilege is used merely as a cloak for venting private malice." "To make the defense of privilege complete, in an action for slander, or libel, good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear." (Punctuation omitted.) *Jones v. J. C. Penney Co.*, 164 Ga. App. 432, 433 (297 SE2d 339) (1982), quoting *Sheftall v. Central of Ga. R. Co.*, 123 Ga. 589 (51 SE 646) (1905).

We find the analysis in *Jones* to be controlling here. In *Jones*, the plaintiffs were terminated for the stated reason that they had sold drugs on the employer's premises. Another employee who was friends with plaintiffs questioned a security guard about the termination, and, according to the employee, the guard told him that plaintiffs had been fired for selling narcotics on the premises. Plaintiffs, however, denied that they had ever sold drugs, and contended that they were fired in retaliation for their union organizing activities. Id. at 433.

In concluding that the statement, even if made, was privileged, this Court first noted that "statements made in response to inquiries as to another person are deemed privileged when the inquirer is one naturally interested in his welfare." (Citations and punctuation

omitted.) *Jones*, 164 Ga. App. at 433. The Court then went on to note that a qualified privilege also exists in those cases involving an employer's disclosure of the reasons concerning an employee discharge to fellow employees "where the disclosure is limited to those employees who have a need to know by virtue of the nature of their duties (such as supervisors, management officials, . . . etc.) and those employees who are otherwise directly affected . . . by the discharged employee's termination. . . ." Id. at 434.

In *Jones*, we considered the following facts to be pertinent: the employee who made the inquiry was more than "a 'fellow general employee,' for not only did he work directly with the appellants on a day-to-day basis, he was a close personal friend as well. . . . [I]t is also undisputed that [the] alleged disclosure to [the co-worker] came in direct response to [the co-worker's] inquiry and outside the presence of other persons." Id. at 434. Clearly, the same circumstances exist here. Erhorn and McClesky were friends and worked closely together. Erhorn initiated the inquiry concerning why McClesky was not at work, and persisted in knowing why McClesky was fired. Erhorn had good reason to question his absence since Erhorn's ability to get his work done was directly affected. Erhorn was taken into a private room and told of the circumstances of the termination, and specifically instructed that what was said was to remain confidential. Under these facts, we have little hesitancy in concluding that "[t]he alleged disclosure must . . . be considered privileged as a matter of law, and it follows that the trial court did not err in granting the [defendants'] motion for summary judgment." Id.

*Judgment affirmed. Ruffin, C. J., and Miller, J., concur in judgment only.*

DECIDED MARCH 25, 2005 —

*Browning & Smith, George T. Smith*, for appellant.
*Swift, Currie, McGhee & Hiers, Michael A. Dalton, John W. Campbell, King & Spalding, John F. Wymer III*, for appellees.