**M.S. KOLY and Delcath Systems, Inc., Plaintiffs,**

v.

**Elizabeth L. ENNEY, Defendant.**

**No. CIV. 3:06–CV–68–JTC.**

United States District Court,
N.D. Georgia,
Newnan Division.

April 18, 2007.

Beverly Ruth Adams, Retail Group Management, Inc., Atlanta, GA, for M.S. Koly, Delcath Systems, Inc., Plaintiffs.

Gary P. Bunch, Office of Gary Bunch, Atlanta, GA, for Delcath Systems, Inc., M.S. Koly, Plaintiffs.

Cynthia L. Counts, Counts & Associates, Atlanta, GA, for Elizabeth L. Enney, Defendant.

David N. Levine, David N. Levine, Attorney at Law, Atlanta, GA, for M.S. Koly, Plaintiff.

Edwin Marger, Office of Edwin Marger, Jasper, GA, for Delcath Systems, Inc., M.S. Koly, Plaintiffs.

Alan Neigher, Byelas & Neigher, Westport, CT, for Elizabeth L. Enney, Defendant.

## *ORDER*

JACK T. CAMP, District Judge.

This matter is currently before the Court on Defendant's motion for judgment on the pleadings [# 11], Plaintiffs' motion to amend the Complaint [# 20]; Defendant's motion for sanctions [# 24]; Plaintiffs' motion to quash a notice to take depositions [# 32]; and Defendant's motion for leave [# 39]. Plaintiffs bring this action for libel based on a communication sent by Defendant.

### I. Background [1]

Plaintiff and Defendant are members of the Rolls–Royce Owners' Club (the "Club"), a 9,000 member non-profit organization related to the restoration and driving of Bentley and Rolls–Royce automobiles. (Compl.¶¶ 6–8.) Mark Corigliano is also a member of the Club and served as the Club's treasurer. (*Id.* ¶ 10.) Corigli-

---

1. The Court accepts the facts in the Complaint as true and construes them in the light most favorable to Plaintiffs, the nonmovants.

*Horsley v. Feldt,* 304 F.3d 1125, 1131 (11th Cir.2002).

ano was on Plaintiff Delcath's board of directors and served on Delcath's board's compensation committee from 2001 to 2005. (*Id.* ¶ 12.) Corigliano is the managing director of Coast Cypress Associates, which designs and implements computer systems. (*Id.* ¶ 11.)

In June 2001, the Club Executive Committee asked Corigliano to replace the Club's computer software with a new program. (*Id.* ¶ 36; Answer, Exh. C at 10–11.) Corigliano agreed to the project with the understanding that he would be compensated for a portion of his time. (Compl. ¶ 37; Answer, Exh. C at 10–11.) Club board members are generally not compensated for their services, except for the Executive Director. (Compl. ¶¶ 13–15; Answer, Exh. A, Section VIII.) The Club Executive Committee recommended payment to Corigliano, provided that the compensation in addition to the project's other costs did not exceed the project's budget. (Compl. ¶ 38; Answer, Exh. C at 10–11.) Plaintiff Koly did not attend the Club's Executive Committee meeting. (Compl. ¶ 39.)

At the Club's January 26, 2002 Board meeting, the Executive Director requested that the Board approve payment to Corigliano for his work. (*Id.* ¶ 40.) The Board passed a resolution to pay Corigliano $9,000.[2] (*Id.* ¶ 41; Answer, Exh. C at 10–11.) In April 2002, Coast Cypress Associates issued a $9,000 invoice to the Club, and the Club payed the invoice via check. (Compl. ¶¶ 43–44.) Plaintiffs had no reason to believe that Corigliano would use or used the $9,000 to purchase Delcath stock or that Corigliano sought the money to purchase Delcath stock. (*Id.* ¶ 49.) The Club and Delcath are not interlocking corporations and do not share a majority of directors. (*Id.* ¶ 50.)

On July 30, 2005, Defendant transmitted[3] the following memorandum via fax and email to "[Club] Regional and Affiliate Chairman":

> At the recent RROC Board of Directors meeting in Greenwich, a past RROC President and current board member (without vote) informed the Board of Directors of an Improper action by the 2002 Board to pay volunteer RROC Treasurer Mark Corigliano $9,000 and most important, a serious conflict of interest.
>
> This serious conflict of interest involves VP Regions, M.S. Koly and Mark Corigliano who serve as interlocking Directors on the Rolls–Royce Owners' Club and Delcath Systems, Inc. and failed to notify the RROC as required by the club's disclosure policy. M.S. Koly is C.E.O. of Delcath Systems Inc. (NASDAQ—DCTH).
>
> At the 2002 business meeting in St. Pete, FL, RROC Treasurer Mark Corigliano was conspicuously absent. During a report of the Technical Committee delivered by Tim Younes in which Tim states that Mark requested to be paid $9,000, an improper action was taken by M.S. Koly to pay Mark. No invoice, no bids and most importantly without disclosure that they served together on other Boards and that Mark was a shareholder in Delcath Systems, Inc.

---

**2.** The minutes of the Board meeting indicate that Corigliano was not present at the meeting and that Plaintiff Koly seconded the motion to pay Corigliano $9,000. (Answer, Exh. C at 10–11.) The minutes also indicate that Koly is Northeast Director of the Club. (*Id.* at 1, 13.)

**3.** Defendant, a Georgia resident, transmitted the memorandum from Georgia to recipients in Connecticut. (*See* Pls.' Resp. to Def.'s Mot. at 7; Compl. ¶ 5.) Plaintiff Koly is a citizen of Connecticut, and Plaintiff Delcath is a Delaware corporation with its principal place of business in Connecticut. (Compl. ¶¶ 4–5.)

Shortly thereafter, RROC Treasurer, Mark Corigliano purchased approx. $8–9,000 (11,500 shares) of stock in M.S. Koly's Delcath Systems, Inc. in which Mark had only previously owned 1500 shares. Mark Corigliano also serves on the 2 member Compensation Committee of Delcath Systems, Inc. that decides M.S. Koly's total compensation.

Not only is it an impropriety, but the new Disclosure Policy instituted by RROC President Carl Peterson was either not implemented and certainly was not enforced. But since there was a disclosure policy in place, Executive Director Tim Younes, past President Carl Peterson, past President Matt Sysak and President Fred Ward were aware or should have been aware and failed to notify the RROC Board of Directors.

The RROC Conflict of Interest policy states:

"Non profit directors and officers are subject to even stricter standards of conduct than applicable to their for-profit counterparts. D & O's may be subjected to the standards of trust law, which require the highest degree of honor and integrity and the exercise of such care and skill as a reasonably prudent person would exercise in dealing with his own property."

"Directors and Officers are required to refrain from engaging in personal activities which would injure or take advantage of the organization. They are prohibited from using their position of trust and confidence to further their private interests. This duty requires and [sic] undivided and unselfish loyalty to the organization and demands that their [sic] be no conflict between one's duty to the organization and self interest." ...

"It is therefore important to avoid even the appearance of such a conflict on [sic] interests."

Please feel free to contact me with any questions or for documentation.

(Compl. ¶¶ 17–19, 23–25, 31–34; Exh. A.)

In December 2005, Plaintiffs filed an amended complaint against Defendant in the District Court for the District of Connecticut alleging claims of defamation, intentional infliction of emotional distress, invasion of privacy, negligent infliction of emotional distress, and negligence based on Defendant's memorandum. *See* Amended Complaint, *Koly v. Enney*, No. 3:05–CV–01281–JCH (D. Conn. filed Dec. 14, 2005). The Connecticut District Court dismissed Plaintiffs' defamation claims on jurisdictional grounds and dismissed the remainder of Plaintiffs' claims on Plaintiffs' motion. *See* Orders, *Koly v. Enney*, No. 3:05–CV–01281–JCH (D. Conn. entered May 26 and Oct. 5, 2006). Plaintiffs filed their Complaint in this Court on July 26, 2006, and alleged a single count of libel based on Defendant's memorandum. (Compl.¶¶ 52–75.) In the Complaint, Plaintiffs specifically referenced Georgia law as the basis for their claim. (*See* Compl. ¶¶ 54, 56, 58, 60, 62, 73.)

## II. Judgment on the Pleadings Standard

■ "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1232–33 (11th Cir.2005). On a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), a court may consider documents attached to the pleadings so long as the documents are central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir.2002). "Judgment on the pleadings is appropriate only when the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1131 (quotation marks omitted).

## III. Discussion

Plaintiffs' Complaint cites to Georgia law as a basis for their libel claim. However, in response to Defendant's motion for judgment on the pleadings, Plaintiffs assert that Connecticut law controls their libel claim. Plaintiffs also have moved to amend their Complaint to delete all references to Georgia law and, instead, refer to "the laws of the State of Connecticut." For that reason, the Court will discuss both Georgia and Connecticut libel law.

### A. Georgia

Libel is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51–5–1(a). "[P]ublication of the libelous matter is essential to recovery." *Id.* § 51–5–1(b). "A libel is published as soon as it is communicated to any person other than the party libeled." *Id.* § 51–5–3.

■ "[W]hen the [allegedly libelous] communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication of the allegedly [libel]ous material, and without publication, there is no cause of action for [libel]." *Kurtz v. Williams,* 188 Ga.App. 14, 371 S.E.2d 878, 880 (1988). This "exception to the publication rule is not a conditional defense destroyed by proof of malice but, rather, an element of the tort of slander or libel." *Id.*

■ Recipients of intracorporate communications need not be corporate officers, directors, board members, or officials: "If a personnel report is written by a supervisor who has the duty to write the report and it is sent to the keeper of personnel records, there is no publication of that report, and any allegedly defamatory material contained therein, no matter how malicious, is not actionable." *Id.* at 881. On the other hand, "if the same malicious report is sent to others who do not have a duty or authorization to receive it, the report is published." *Id.* Overall, in evaluating the publication issue, "the relevant question is whether, because of their duty or authority" the recipients of the material had reason to receive it. *McClesky v. The Home Depot, Inc.,* 272 Ga.App. 469, 612 S.E.2d 617, 620 (2005). Communication between parties involved in a business relationship may fall under the intracorporate exception to publication. *See Galardi v. Steele–Inman,* 266 Ga.App. 515, 597 S.E.2d 571, 576 (2004) (communication regarding beauty pageant contestant between employee of pageant operator and employee of pageant promoter not a publication due to their business relationship); *see also Bates v. Variable Annuity Life Ins. Co.,* 200 F.Supp.2d 1375, 1377–78, 1384 (N.D.Ga.2002) (Shoob, J.) (email regarding employee's termination sent to "various" company managers not published because the managers "had a reason to receive the information").

■ Further, "[t]ruth is a complete defense to libel under Georgia law." *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1262 (11th Cir.2004); *see also* O.C.G.A. § 51–5–6. The plaintiff bears the burden of proving that an allegedly defamatory or libelous statement is false. *Jaillett v. Ga. Television Co.,* 238 Ga.App. 885, 520 S.E.2d 721, 724 (1999).

In determining whether a statement is false, [d]efamation law overlooks minor inaccuracies and concentrates upon substantial truth .... [A] statement is not

considered false unless it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced. [M]inor factual errors which do not go to the substance, the gist, the sting of [a] story do not render a communication false for defamation purposes.

*Id.* (citations and quotation marks omitted). In that same vein, a statement based on nondefamatory facts disclosed in the same communication is an opinion and is not defamatory or libelous: "If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts." *Id.* at 726. In other words,

[i]f the defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement-nor for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion.

*Id.* (quoting Restatement (Second) of Torts § 566, cmt. c).

■ Defendant is entitled to judgment on the pleadings under Georgia law. First, Defendant's memorandum was not "published" because it was an intracorporate communication. According to Defendant's memorandum, Defendant is the Activities Chairman of the Club's Rebel Region. (Compl., Exh. A.) Defendant sent her memorandum to "[Club] Regional and Affiliate Chairman" or other Club officers. (Compl.¶¶ 16–17, 19, 23–25, 31–34, Exhs. B, C, D.) Plaintiff has not alleged that anyone else received the memorandum.

The Club's by-laws[4] state that (1) Club officials, such as the Treasurer and Directors, are members of the Club's Board of Directors; (2) the Board may suspend a Board Member for good cause; (3) all eligible Club members vote on the removal of a Board Member for good cause and vote in general Club elections; and (4) all Club members must comply with the Club's conflict of interest policy, and Board members must submit annual disclosure forms for that purpose. (Answer, Exh. A, Section II, arts. 1, 22, 24; Section III, art. 2.) Thus, allegations of an "improper action" and "serious conflict of interest" with respect to Club funds and business by Club officials, such as Treasurer Corigliano and Koly, the "VP Regions" or Northeast Director, fall within the limits of the type of material Club leaders, such as Regional and Affiliate Chairmen, if not all Club members eligible to vote, have reason or the duty to receive. *See McClesky,* 612 S.E.2d at 620; *Kurtz,* 371 S.E.2d at 881. At minimum, Defendant's memorandum is akin to the email circulated to company managers in *Bates,* which informed the managers of an employee's termination for abusive behavior and advised them to warn other employees about potential terminable behavior. *See Bates,* 200 F.Supp.2d at 1378–79, 1384. Therefore, Defendant's memorandum is an intracorporate communication and fails to satisfy the publication requirement under § 51–5–1(b).

■ Additionally, even if Defendant's memorandum satisfied the publication requirement, it qualifies as Defendant's opinion based on a stated set of nondefamatory facts and is not libelous. Plaintiffs' Com-

4. Because Plaintiffs refer to the by-laws in the Complaint, (Compl.¶ 15), the by-laws are attached to Defendant's Answer, (Answer, Exh. A), and Plaintiffs do not dispute them, the Court may consider them without converting Defendant's motion to a summary judgment motion. *See Horsley,* 304 F.3d at 1134–35.

plaint, taken as true, confirms most of the facts in Defendant's memorandum: (1) Koly and Corigliano were Club officers or Directors; (2) Corigliano was also on Delcath's board of directors and Delcath's compensation committee; (3) Corigliano performed computer work for the Club and requested $9,000 in compensation; (4) the Club's Board passed a resolution to pay Corigliano $9,000 before any invoice was submitted; and (5) Corigliano later purchased Delcath stock. (Compl. ¶¶ 10, 12, 36–38, 40–41, 43–44; *see also* Answer, Exh. C at 10–11; Pls.' Resp. to Def.'s Mot. at 12–13.)

Because the facts are true or substantially true, they are not defamatory or libelous. When Defendant states her conclusion, that an "improper action" was taken and a "serious conflict of interest" existed, she is stating her opinion based on her stated facts. Her conclusion does not rely on or imply the existence of other, unstated facts: essentially, she alleges that Koly's and Corigliano's positions as Club and Delcath directors created a conflict of interest or the appearance of a conflict of interest under Club policies with respect to the Club's $9,000 payment to Corigliano prior to the issuance of an invoice and Corigliano's subsequent purchase of Delcath stock. *See Jaillett,* 520 S.E.2d at 726. Therefore, Defendant's memorandum is an opinion and is not libelous. *Id.*

### B. Connecticut

■■■■ In Connecticut, [a] defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement.

*Cweklinsky v. Mobil Chemical Co.,* 267 Conn. 210, 837 A.2d 759, 763–64 (2004) (quotation marks, punctuation, and citations omitted). "Defamation is comprised of the torts of libel and slander .... Libel ... is written defamation .... Libel per se ... is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages." *Gambardella v. Apple Health Care, Inc.,* 86 Conn.App. 842, 863 A.2d 735, 741 (2005) (quotation marks omitted). "In general, there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling. To fall within the category of libels that are actionable per se because they charge crime, the libel must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached." *Id.* at 741–42 (quotation marks and punctuation omitted).

■■■■ Publication of the allegedly defamatory statement may be accomplished via an intracorporate communication. *See Gaudio v. Griffin Health Servs. Corp.,* 249 Conn. 523, 733 A.2d 197, 210 n. 23 (1999). Similar to Georgia law, opinions are not defamatory as a matter of law. *Iosa v. Gentiva Health Servs., Inc.,* 299 F.Supp.2d 29, 38 (D.Conn.2004). "An opinion ... is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Id.* (quotation marks omitted). Opinions are of "the type where the defendant states the fact upon which he or she bases the opinion, or the opinion is based upon facts that are common knowledge, or the facts upon which the opinion is based are readily accessible to the recipient." *Lizotte v. Welker,* 45 Conn. Supp. 217, 709 A.2d 50, 57 (1996) (quotation marks omitted). "If the facts that are

criticized or commented upon are *not* stated or known, however, then fair comment is no defense." *Id.* (quotation marks omitted). "[E]xpressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Id.* at 58. Further, "where the main charge, or gist, of the libel is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Id.* at 56 (quotation marks omitted).

■■■■ Defendant's statements, that an "improper action" was taken and a "serious conflict of interest" existed, are not libel per se, as they do not charge Plaintiffs with a crime of moral turpitude. Much like under Georgia law, Defendant's memorandum qualifies as an expression of "pure opinion," as it states the facts upon which it is based and does not imply or rely upon unstated facts. As noted above, taking Plaintiff's Complaint as true, the facts stated in Defendant's memorandum are substantially true. Defendant set out the relevant facts and her conclusion based on those facts. For the same reasons discussed above under Georgia law, Defendant's conclusion is her opinion and is not defamatory or libelous under Connecticut law.

Therefore, Defendant is entitled to judgment on the pleadings under either Georgia law or Connecticut law. Because the Court reaches the same result under either state's law, Plaintiffs' motion to amend the Complaint to refer to Connecticut law is futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.2004). Accordingly, the Court **GRANTS** Defendant's motion for judgment on the pleadings and **DENIES** Plaintiffs' motion to amend the Complaint.

## IV. Motion for Sanctions

Defendant moves to sanction Plaintiffs under Federal Rule of Civil Procedure 11.

Defendant argues that Plaintiffs failed to make a reasonable or good faith inquiry into the facts and law of the case. Defendant contends that a reasonable investigation would have revealed that Plaintiffs' claim is barred under Georgia and Connecticut law. Further, Defendant submits that Plaintiffs brought this action to delay or harass her. Defendant requests her attorney's fees as a sanction.

"The standard for testing conduct under amended Rule 11 is reasonableness under the circumstances." *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir.2003) (quotation marks omitted).

A district court has the discretion to award Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Id.* (quotation marks omitted). In assessing a Rule 11 motion, "courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir.2003). "Sanctions are warranted when a party exhibits a deliberate indifference to obvious facts, but not when the party's evidence to support a claim is merely weak." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir.2002) (quotation marks omitted).

The bulk of Defendant's argument in support of her motion for sanctions is a restatement of her argument on the merits of her motion for judgment on the pleadings. Defendant asserts that because it is clear that Plaintiffs' claim is precluded, Plaintiffs failed to conduct a reasonable investigation of the law and facts. The

Court does not agree. This case has a reasonable factual basis, as it is undisputed that Defendant sent the memorandum and that it contained the statements alleged. Although the Court ultimately agrees with Defendant's position that the statements were opinion and not libelous, Plaintiffs' claims are not based on a legal theory that has *no* reasonable chance of success. While the tenets of libel law are relatively settled and straightforward, its application to the facts must be conducted on a case-by-case basis. Given the substantial truth of the memorandum based on the facts alleged in the Complaint, the Court finds Plaintiffs' claims "weak," but not deliberately indifferent to obvious facts. *Riccard*, 307 F.3d at 1294.

Additionally, this case has an unusual procedural background. The record indicates that Plaintiffs initially brought suit in Connecticut, but Plaintiffs' defamation claim was dismissed on jurisdictional grounds. Plaintiffs then refiled their action in this Court, which has personal jurisdiction over Defendant. Plaintiffs' attempt to have a court reach the merits of their claim is not improper. However, the Court finds the inclusion of Delcath as a plaintiff[5] and Plaintiffs' activity in this Court unusual. It is not clear from the filings in the District of Connecticut on what law Plaintiffs' complaint in that action was based. In this Court, Plaintiffs' initial Complaint explicitly relied on Georgia law, but, in their response to Defendant's motion for judgment on the pleadings, Plaintiffs argued that Connecticut law should apply to their claim. Plaintiffs later moved to amend their complaint to refer to Connecticut law. Despite this peculiarity, the Court will give Plaintiffs the benefit of the doubt. Therefore, the Court **DENIES** Defendant's motion for sanctions.

## V. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's motion for judgment on the pleadings [# 11], **DENIES** Plaintiffs' motion to amend the Complaint [# 20], and **DENIES** Defendant's motion for sanctions [# 24]. The Court **GRANTS** Defendant's motion for leave to file her consent to postpone depositions and opposition to Plaintiffs' motion to quash [# 39]. However, because the Court grants Defendant's motion for judgment on the pleadings, the Court **DENIES as moot** Plaintiffs' motion to quash [# 32]. The Court **DIRECTS** the Clerk to **CLOSE** this case.

---

**5.** In Defendant's memorandum, Delcath is used in a descriptive manner. No allegations were made that Delcath acted improperly or engaged in a conflict of interest. Generally, corporations may sue for libel where the libel "adversely affects [the corporation's] business, property or credit." *Eason Publ'ns v. Atlanta Gazette, Inc.*, 141 Ga.App. 321, 233

S.E.2d 232, 232 (1977). The Complaint alleges that Defendant's statement injured Delcath's reputation and exposed it to "public hatred, contempt or ridicule." (Compl.¶¶ 53, 55, 57, 59.) It appears that Plaintiffs have failed to allege that Delcath was injured in a cognizable manner.