[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 5, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11201

_____

D.C. Docket No. 99-00136-CV-JTC-3

NEAL HORSLEY,
d.b.a. Pathway Communications,
d.b.a. ChristianGallery.com,
d.b.a. BestChoice.com,
d.b.a. The Creator's Rights Party,

Plaintiff-Appellant,

versus

GLORIA FELDT,
PLANNED PARENTHOOD FEDERATION OF AMERICA,
KIM GANDY, and
NATIONAL ORGANIZATION FOR WOMEN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 5, 2002)**

Before BIRCH, CARNES and COX, Circuit Judges.

CARNES, Circuit Judge:

This appeal is the second occasion we have had recently to decide issues stemming from a defamation action brought by Neal Horsley in response to criticisms of him in the wake of the murder of Doctor Barnett Slepian, an abortion provider. The first occasion was in a case where Horsley claimed that Geraldo Rivera had defamed him during a television program by accusing him of a felony when he said that Horsley had aided and abetted murder and was an accomplice to murder. Horsley v. Rivera, 292 F.3d 695 (11th Cir. 2002). This Court held the statements in that case were protected as rhetorical hyperbole under the First Amendment and Georgia law, and for that reason the district court should have granted the defendant judgment on the pleadings. Id. at 703.

Although the defamation case giving rise to this appeal also had its origins in criticisms of Horsley because of the murder of Dr. Slepian, it involves different statements and defendants. Here Horsley's suit is against the Planned Parenthood Federation of America (Planned Parenthood); its president, Gloria Feldt; the National Organization for Women (NOW); and its executive vice president, Kim Gandy; and the lawsuit arises out of statements allegedly made by Feldt and Gandy shortly after Dr. Slepian's murder.

Although applying the same principles of law as we did in the related case, Rivera, we reach a somewhat different conclusion in this case. While we affirm most of the district court's judgment on the pleadings for the defendants, we reverse the part of the judgment that involves one of the statements allegedly made by Feldt.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Horsley, an anti-abortion activist and founder of the Creator's Rights Party, created and operated an anti-abortion Internet website known as "the Nuremberg Files," which listed the names of abortion providers. Dr. Slepian was murdered on October 23, 1998. His name did not appear on the Nuremberg Files website prior to his murder, but on October 24, 1998, the day after the murder,  Horsley added Slepian's name to the list. Also on October 24, Horsley altered the Nuremberg Files website to graphically reflect which abortion providers had been wounded or killed; he did so by "graying-out" the wounded and "striking-through" the dead. Dr. Slepian's name was shown with a line struck through it.

### A.  THE  FELDT  STATEMENTS

On October 24, 1998, Defendant Gloria Feldt, in her capacity as president of Planned Parenthood, held a press conference about Dr. Slepian's murder. The Associated Press  ran an article reporting on Feldt's statements at the press

3

conference. The complaint alleged the article stated that Feldt "told a news conference in midtown Manhattan that the name of the physician, Dr. Barnett Slepian, had appeared on a list of abortion doctors marked for death that was circulated on the Internet," and that "Feldt said she didn't know how long the Internet target list that included Slepian's name has existed, or whether either he or the police were aware of it."

Although Horsley did not include a copy of the AP article with his complaint, Feldt and Planned Parenthood attached a copy of it to their answer. The attached article contained the statements quoted by Horsley in the complaint, which we have quoted in the preceding paragraph, and it also reported that "[Dr. Slepian's] name . . . was 'crossed off' after he was gunned down in his suburban Amherst home late Friday." The article further characterized Feldt as "charg[ing] . . . that police in Buffalo, N.Y., failed to protect a slain abortion doctor because of a 'fundamental anti-choice philosophy' within the department," and it included several paragraphs about Feldt's remarks on police bias.

Portions of Feldt's press conference were broadcast nationwide by CNN Live News on October 24, 1998. As alleged by Horsley, the CNN broadcast showed Feldt stating that "[Dr. Slepian's] name had been on a list – you can look it up on the web, christiangallery.com – a list of doctors who are subject to

4

surveillance and murder. His name was already crossed out." Horsley did not include the CNN transcript with his complaint, but Feldt and Planned Parenthood included with their amended answer two CNN transcripts. Those transcripts did not include the statements that Horsley alleged Feldt made, which we have quoted in this paragraph, and Feldt and Planned Parenthood stated that they had been unable to locate any CNN transcripts containing those statements. Horsley claimed that he had a transcript of the CNN broadcast reflecting the statements he alleged Feldt made, but he did not provide a copy of that transcript.

## B. THE GANDY STATEMENTS

On October 26, 1998, Horsley voluntarily participated in a televised debate on CNN Today with Defendant Kim Gandy, the executive vice president of NOW. Horsley's complaint alleged that the following exchange occurred during the debate:

> JEANNE MESERVE, CNN ANCHOR: Mr. Horsley, let me start with you. Do you advocate the murder of doctors who perform abortions? What was the purpose of your Web site?
>
> NEAL HORSLEY, FOUNDER, CREATOR'S RIGHTS PARTY: Absolutely not. We want to make one [thing] clear, that we don't want to see anybody die. But the fact is, 3,000 babies are going to die today, and that fact has been ignored for the last 25 years. And the thing the Nuremberg files– Web site is doing is reminding people that doctors who kill babies, even if it is authorized by the Supreme Court, might find themselves on trial someday in the same way that the Nazis found themselves on trial at Nuremberg.

5

MESERVE: So why, exactly, do you have their names on the Web site?

HORSLEY: Because we are making a record, a database, of the people who are actually involved in the – in slaughtering babies and who make a living slaughtering babies, because we want to accumulate evidence in hopes that someday trials might actually be held where that evidence would be used to prosecute those people.

KIM GANDY, NATIONAL ORGANIZATION FOR WOMEN: And for that, of course . . .

MESERVE: Kim Gandy, your response.

GANDY: . . . you need to have the names of their children, the ages of their children, where their children need to go to school; obviously, you need that kind of information.  You're not any better than the folks who sign the Justifiable Homicide Petition and one of those, Paul Hill, went on himself to murder a doctor in Pensacola, Florida.

You have the blood of these doctors on your hands, because you have incited and you have inspired and conspired with others to result in what exactly has happened, that these doctors have been murdered.  And until the United States government starts treating these, instead of treating them as isolated incidents, starts treating them as the conspiracy that they are and starts putting the same resources into these murderers that went into the Olympic bombings, that went into the World Trade Center bombings, we are going to see this continue to happen.  Doctors and clinical workers will die.

## C.  THE DISTRICT COURT PROCEEDINGS

Horsley filed a complaint against Feldt, Planned Parenthood, Gandy, and NOW, claiming they had defamed him by accusing him of conspiring in Dr. Slepian's murder, and claiming that they had conspired together to defame him.

6

The defendants filed answers and some motions, including motions for judgment on the pleadings, contending that Feldt's and Gandy's statements were protected expressions of opinion and rhetorical hyperbole. Horsley moved for production of documents, but the district court suspended discovery pending a ruling on the defendants' motions for judgment on the pleadings. Thereafter, the district court granted judgment on the pleadings in favor of the defendants. Horsley filed a timely appeal.[1]

## II. DISCUSSION

Horsley contends the district court erred in determining based on the pleadings that Feldt's and Gandy's statements were not actionable.[2] We review de

---

[1]Horsley does not raise before us any challenge to the part of the judgment in favor of the defendants insofar as it concerns his claim that they had conspired against him. So, we will not mention it any further here. See Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) (issues not argued on appeal deemed waived).

[2]Horsley also contends the district court erred in suspending discovery. We review the district court's decision to do that only for abuse of discretion. See Lee v. Etowah County Bd. of Educ., 963 F.2d 1416, 1420 (11th Cir. 1992). There was none, because the defendants' motions for judgment on the pleadings are facial challenges to the legal sufficiency of Horsley's complaint that "present[] a purely legal question; there are no issues of fact because the allegations contained in the pleadings are presumed to be true." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997) (citations omitted). For that reason, there was no need for discovery before the district court ruled on those motions. Id.

7

novo a district court's entry of judgment on the pleadings, accepting the facts in the complaint as true and viewing them in the light most favorable to the nonmoving party. See Ortega v. Christian, 85 F.3d 1521, 1524-25 (11th Cir. 1996). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted), cert. denied, 122 S. Ct. 1608 (2002). We begin with the Gandy statements, because it is easier to sort out the alleged facts relating to them.

## A. THE GANDY STATEMENTS

Horsley contends Gandy defamed him during their televised debate on CNN. The Supreme Court has long recognized "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S. Ct. 710, 721 (1964). Acknowledging that debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks," id., the Court nevertheless has decided that such attacks are constitutionally protected and those who make them are exempt from liability for defamation if the attacks are simply "rhetorical hyperbole." See, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S. Ct. 2695, 2706 (1990); Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,

8

418 U.S. 264, 285-86, 94 S. Ct. 2770, 2782 (1974) (Letter Carriers); Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 14, 90 S. Ct. 1537, 1542 (1970). The constitutional protection provided rhetorical hyperbole "reflects 'the reality that exaggeration and non-literal commentary have become an integral part of social discourse.'" Rivera, 292 F.3d at 701 (quoting Levinsky's, Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 128 (1st Cir. 1997)). Gandy and NOW contend that her statements were merely rhetorical hyperbole for which they cannot be held liable.

In determining whether an expression is protected rhetorical hyperbole, "we must consider the circumstances in which the statement was expressed." Rivera, 292 F.3d at 702. In Rivera, although Geraldo Rivera had stated that Horsley was "an accomplice to homicide" and that he had "aid[ed] and abet[ted] a homicide," the context of those remarks led us to conclude that they were non-defamatory rhetorical hyperbole. Id. at 698, 702. Rivera's comments were made during "an emotional debate concerning emotionally-charged issues of significant public concern"; both Rivera and Horsley had "used non-literal, figurative language in expressing their views"; Horsley's statements showed "that he understood Rivera to be speaking in a figurative rather than literal sense"; and statements by both of them "instill[ed] upon a reasonable viewer the impression that the parties were exchanging dialogue at a non-literal level." Id. For those reasons, we held that

9

"[a] reasonable viewer would have understood Rivera's comments merely as expressing his belief that Horsley shared in the moral culpability for Dr. Slepian's death, not as a literal assertion that Horsley had, by his actions, committed a felony." Id.; see also Bresler, 398 U.S. at 7-8, 12-14, 90 S. Ct. at 1538, 1541-42 (holding that statements characterizing plaintiff's negotiating position as "blackmail" were not defamatory but instead were "vigorous epithet[s] used by those who considered [the plaintiff's] negotiating position extremely unreasonable," because statements were made during a "tumultuous" public meeting where "[t]he debates themselves were heated, as debates about controversial issues usually are").

The same is true here. The context of Gandy's statements and their flavor convince us that they are rhetorical hyperbole. Gandy and Horsley were engaged in heated debate on the highly controversial topic of abortion and the emotionally-charged subject of the Nuremberg Files and the murder of abortion providers. See, e.g., Rivera, 292 F.3d at 702; see also Stenberg v. Carhart, 530 U.S. 914, 947, 120 S. Ct. 2597, 2617 (2000) (O'Connor, J., concurring) ("The issue of abortion is one of the most contentious and controversial in contemporary American society."). Their debate occurred only three days after Dr. Slepian was killed. Gandy made the statements in question after Horsley had said that "the Nuremberg

files . . . is reminding people that doctors who kill babies, even if it is authorized by the Supreme Court, might find themselves on trial someday in the same way that the Nazis found themselves on trial at Nuremberg," and that "we are making a record, a database, of the people who are actually involved in . . . slaughtering babies and who make a living slaughtering babies, because we want to accumulate evidence in hopes that someday trials might actually be held where that evidence would be used to prosecute those people."  Gandy responded to Horsley:

> You're not any better than the folks who sign the Justifiable Homicide Petition and one of those, Paul Hill, went on himself to murder a doctor in Pensacola, Florida.
>
> You have the blood of these doctors on your hands, because you have incited and you have inspired and conspired with others to result in what exactly has happened, that these doctors have been murdered.  And until the United States government starts treating these, instead of treating them as isolated incidents, starts treating them as the conspiracy that they are and starts putting the same resources into these murderers that went into the Olympic bombings, that went into the World Trade Center bombings, we are going to see this continue to happen.  Doctors and clinical workers will die.

(Emphasis added).

Taken in context, Gandy's statements "consisted of the sort of loose, figurative language that no reasonable person would believe presented facts." Rivera, 292 F.3d at 702; see also Milkovich, 497 U.S. at 20, 110 S. Ct. at 2706. Her comments were "lusty and imaginative expression[s] of the contempt felt by [her] towards [Horsley]," Letter Carriers, 418 U.S. at 286, 94 S. Ct. at 2782, but

11

they did not actually accuse Horsley of criminal action. Although Gandy compared Horsley with the Justifiable Homicide Petition signers, she then distinguished him from Paul Hill by stating that Hill "went on himself to murder a doctor."

Gandy's statement that Horsley had "conspired with others to result in what exactly has happened, that these doctors have been murdered," was part of her expression of contempt for Horsley's message and his way of getting that message out, and a way of voicing her opinion that his message had contributed to the atmosphere of violence that had led to the deaths of abortion providers. In view of the undisputed facts, it was fair comment or, more to the point, constitutionally protected comment. Given the context and the surrounding comments of both Horsley and Gandy, a reasonable listener would not have taken the statement as a literal assertion that Horsley had actually conspired in the technical legal sense with those who actually murdered Dr. Slepian to bring about his death, thereby committing a felony. See Rivera, 292 F.3d at 702. Importantly, Gandy did not imply that she had access to any facts, beyond those that were undisputed, which cast Horsley in a bad light. In their context, the inflammatory words Gandy used hyperbolically accused Horsley only of that actual conduct to which he freely admitted – providing to the world a list of abortion providers and then striking

12

through the names as they were killed.  The point of her words was that specific conduct made Horsley morally culpable of murder – the same, in her view, as if he had actually conspired with those who committed it.   The district court did not err in granting judgment on the pleadings.[3]

## B.  THE  FELDT  STATEMENTS

Horsley also challenges the district court's grant of judgment on the pleadings to Feldt and Planned Parenthood on his defamation claim involving Feldt's alleged statements at the press conference as reported in the AP article and broadcast on CNN.  The theory of that claim, as with the one involving the Gandy statements,  is that Feldt's statements implicitly accused Horsley of conspiring in Dr. Slepian's murder.  Before applying the law, we have to determine what the alleged facts are, and that requires a decision about the scope of the materials that define the facts, because Feldt and Planned Parenthood attached to their amended answer materials that were not included in the complaint. They ask us to consider

---

[3]Gandy's comments were also protected as hyperbolic expression under Georgia law, "which similarly provides that the pivotal question in a defamation action is whether the challenged statement(s) can reasonably be interpreted as stating or implying defamatory facts."  Rivera, 292 F.3d at 702 n.2 (citing Jaillett v. Ga. Television Co., 520 S.E.2d 721, 725-26 (Ga. Ct. App. 1999); Webster v. Wilkins, 456 S.E.2d 699, 700 (Ga. Ct. App. 1995)).

13

those materials, and Horsley objects to our doing so. We will dispose of that preliminary issue before turning to the merits of the judgment on the pleadings.

### 1. Whether Attachments to the Answer May Be Considered in Deciding a Motion for Judgment on the Pleadings

In his complaint, Horsley quoted Feldt's alleged statements from an AP article and a CNN broadcast, but he did not attach either the article itself or a transcript of the broadcast. Feldt and Planned Parenthood included as exhibits to their amended answer both an AP article and "[t]he actual available transcripts of the two CNN broadcasts that contain excerpts from the press conference . . . ." In granting judgment on the pleadings in favor of Feldt and Planned Parenthood, the district court considered the AP article attached to the amended answer.[4]

Federal Rule of Civil Procedure 12(c) contains a conversion provision which states that: "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Rule 7(a) defines "pleadings" to include

---

[4]It is not clear whether the district court also considered the CNN transcripts that were attached to the amended answer, but it does not matter because our review is de novo.

14

both the complaint and the answer, and Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." It would seem to follow that if an attachment to an answer is a "written instrument," it is part of the pleadings and can be considered on a Rule 12(c) motion for judgment on the pleadings without the motion being converted to one for summary judgment. See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 453 n.5 (7th Cir. 1998); cf. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (in context of Rule 12(b)(6)).

Although we have not previously examined Rule 10(c)'s written instrument provision in the context of a Rule 12(c) motion for judgment on the pleadings, we have addressed a similar issue under Rule 12(b)(6) involving matters attached to a motion to dismiss. Our analysis there is instructive, because the conversion provision applicable to Rule 12(b)(6) motions is identical to the one applicable to Rule 12(c) motions, and they serve the identical purpose of preventing the circumvention of the Rule 56 notice and opportunity to be heard provisions when extraneous materials are considered.

Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, see In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970 (9th Cir.

1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. See Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999). "Undisputed" in this context means that the authenticity of the document is not challenged. See, e.g., Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well.

We recognize, of course, that the "written instrument" provision of Rule 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes") is applicable to pleadings and not to motions, but we do not believe it dictates a different result insofar as the incorporation by reference doctrine is concerned. That doctrine with its two requirements must apply for Rule 12(c) purposes to documents attached to answers just as it applies for Rule 12(b)(6) purposes to documents attached to motions to dismiss. Otherwise, the conversion clause of Rule 12(c) would be too easily circumvented

16

and disputed documents attached to an answer would have to be taken as true at the pleadings stage. The written instrument provision of Rule 10(c) does not require that.

Applying the incorporation by reference doctrine to the pleadings in this case leads us to conclude that the AP article attached to the amended answer should be considered as part of the pleadings for Rule 12(c) purposes, because that article is central to one of the claims and its authenticity is undisputed.

The CNN transcripts are a different story. Feldt and Planned Parenthood state in their amended answer that what they have attached are "[t]rue and correct copies of the available transcripts of the CNN broadcasts containing excerpts of Ms. Feldt's actual statements at the press conference. . . ."[5] In his response to the motion for judgment on the pleadings, however, Horsley disputes the authenticity of those transcripts; he says that neither one is the transcript referred to in his complaint. Moreover, according to the amended answer itself, the attached

---

[5]Feldt and Planned Parenthood state that they were "unable to locate or obtain any transcript or video footage containing either the complete press conference or the purported excerpt of the press conference set forth in the Complaint, either from CNN or from any other source. The actual available transcripts of the two CNN broadcasts that contain excerpts from the press conference have been attached to Defendants' Amended Answer. These transcripts form the basis of Defendants' denial in the Amended Answer that the alleged statements on which Horsley bases his claims were broadcast by and are available from CNN."

17

transcripts contain only "excerpts of Ms. Feldt's actual statements." They do not contain the statements the complaint insists that Feldt made, and for all we know at this stage those statements were left out of the excerpts. Because the authenticity of the transcripts attached to the amended answer is disputed, and because they are not complete transcripts of all of Ms. Feldt's statements in the broadcast, they may not be considered in deciding the Rule 12(c) motion for judgment on the pleadings.

## 2. The Merits of the Judgment on the Pleadings

With the alleged facts settled for present purposes, we now decide whether Horsley's defamation claim based on the press conference survives the defendants' motion for judgment on the pleadings. We will consider the press conference statements allegedly reported in the AP article separately from those allegedly broadcast over CNN, because although Feldt spoke at only one press conference, her comments were reported separately by CNN and the AP to distinct audiences and thus constituted separate publications. See generally Southern Bell Tel. and Tel. Co. v. Coastal Transmission Serv., Inc., 307 S.E.2d 83, 88 (Ga. Ct. App. 1983) ("Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication."); see also Restatement (Second) Torts § 577 cmt. a (1977) (same). Only if everyone who read the AP article heard

18

the CNN broadcast, and vice versa, could we consider them together to the benefit of Feldt and Planned Parenthood, and no one suggests that happened.

*a. The Alleged Statements in the AP Article*

The relevant part of the AP article reporting on Feldt's statements at the press conference is as follows:

> Gloria Feldt also told a news conference in midtown Manhattan that the name of the physician, Dr. Barnett Slepian, had appeared on a list of abortion doctors marked for death that was circulated on the Internet. The name, she said, was "crossed off" after he was gunned down in his suburban Amherst home late Friday.
>
> ***
>
> Feldt said she didn't know how long the Internet target list that included Slepian's name has existed, or whether either he or the police were aware of it. However, she said, "lists of this sort have existed for years, and are taken very, very seriously" by pro-choice groups, if not always by law enforcement authorities.

Those statements are not defamatory.

For one thing, nowhere in the article is Horsley mentioned either by name or ascertainable implication. To be actionable, "[t]he [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff." Fiske v. Stockton, 320 S.E.2d 590, 592 (Ga. Ct. App. 1984). A plaintiff "cannot rely on rumor, innuendo, and extraneous circumstances to create an inference of defamation." Willis v. United Family Life Ins., 487 S.E.2d 376, 379

19

(Ga. Ct. App. 1997).  The AP article does not say that Feldt  mentioned Horsley's name or the name of the website containing the "target list," or even that there was a website (as distinguished from a list of names "that was circulated on the Internet").

Second, even if Horsley's identity were ascertainable from Feldt's statements discussed in the AP article, those statements did not implicate Horsley in a conspiracy to murder Dr. Slepian.  According to the article, Feldt said that Dr. Slepian's name was crossed off the Internet list <u>after</u> he was murdered.  Feldt's statements did refer to "a list of abortion doctors marked for death" and "the Internet target list," but those are imaginative and perhaps hyperbolic expressions reflecting her opinion about why the list was created and maintained; they do not state an allegedly false historical  fact and therefore are not actionable.  <u>See</u> <u>Milkovich</u>, 497 U.S. at 20, 110 S. Ct. at 2706; <u>Collins v. Cox Enter., Inc.</u>, 452 S.E.2d 226, 227 (Ga. Ct. App. 1994) (holding that trial court did not err in granting motion for judgment on pleadings where defendant's editorial implied plaintiff acted with dishonest motive).[6]  For what it is worth, we also note that the article in

---

[6]In support of his contention that reasonable people would have believed that Feldt's press conference statements as reported in the AP article defamed him, Horsley proffers a <u>New York Times</u> article and forty emails he received, and he points to the fact that the Justice Department is conducting an investigation about him.  None of those matters were alleged in the complaint. Whatever their

20

its entirety reveals that the focus of Feldt's statements was primarily on her belief that law enforcement's "fundamental anti-choice philosophy" contributed to Dr. Slepian's death.

### b. The Alleged Statements in the CNN Broadcast

As alleged in the complaint, CNN broadcast that Feldt made the following statements, among others, at the press conference:

> [Dr. Slepian's] name had been on a list – you can look it up on the web, christiangallery.com – a list of doctors who are subject to surveillance and murder. His name was already crossed out.

The statement that "[Dr. Slepian's] name was already crossed out" is ambiguous. On the one hand, it could mean that his name was "already crossed out" at some unspecified time after his murder and before Feldt made her statements. If that is what it means, Horsley concedes it is accurate. On the other hand, the statement could mean that the name was "already crossed out" before the time the murder occurred. The latter reading certainly implies that the person who crossed out the name, the person who was running the website, had knowledge that the murder was going to happen. As Feldt and Planned Parenthood conceded at oral

---

relevance might be in deciding a motion for summary judgment, we will not consider matters outside the pleadings when passing on a Rule 12(c) motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c); Int'l Ass'n of Machinists and Aerospace Workers v. United Technologies Corp., 704 F.2d 569, 572 (11th Cir. 1983).

argument, stating as a factual matter that someone had advance knowledge of a murder and did nothing to prevent it is defamatory. The ambiguity in the "already crossed out" statement prevents us from granting judgment on the pleadings in favor of the defendants. See Dun & Bradstreet, Inc. v. Miller, 398 F.2d 218, 222-23 (5th Cir. 1968) (applying Georgia law); Ferguson v. Park Newspapers of Ga., Inc., 253 S.E.2d 231, 231-32 (Ga. Ct. App. 1979).

The fact that Feldt's alleged comments on the CNN broadcast did not explicitly name Horsley does not stop them from being reasonably susceptible of a defamatory reading. Unlike the statements reported in the AP article, those allegedly contained in the CNN broadcast made Horsley's identity readily ascertainable, because in them Feldt specifically mentioned christiangallery.com, which was created and maintained by Horsley. See Fiske, 320 S.E.2d at 592-93. Accordingly, the district court erred in granting judgment on the pleadings for Horsley's defamation claim based on Feldt's alleged statements as broadcast on CNN Live News. See Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1213 (11th Cir. 2001), cert. denied, 122 S. Ct. 1608 (2002). Of course, there will be no genuine issue of material fact if all the evidence establishes that Feldt did not actually make the "already crossed out" remark, or if she did make it, that the context and other things she said prevented any reasonable person from construing

22

it as a factual statement that Horsley had advance knowledge Dr. Slepian was going to be murdered.  If that turns out to be the case, Rule 56 is adequate to the task.

### III.  CONCLUSION

The district court's judgment on the pleadings is AFFIRMED as to the defamation claims against Gandy (Count III) and NOW (Count IV) in their entirety, and as to the defamation claims against Feldt (Count I) and Planned Parenthood (Count II) insofar as the alleged statements contained in the AP article are concerned, but is  REVERSED as to the defamation claims against Feldt and Planned Parenthood insofar as the statements allegedly contained in the CNN broadcast are concerned.  The case is REMANDED for further proceedings consistent with this opinion.