[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15259
Non-Argument Calendar

_____

D. C. Docket No. 05-23123-CV-CMA

NEIL KHAN, an individual,

Plaintiff-Appellant,

versus

KATHERINE FERNANDEZ-RUNDLE, officially as
State Attorney of Miami Dade County, Florida,
KATHLEENE HOAGUE,
DON HORN,
HOWARD POHL, officially and individually,
ERIKA ISIDRON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 3, 2007)

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

This is former Miami-Dade assistant state attorney Neil Khan's appeal from the dismissal of his lawsuit, brought under 42 U.S.C. § 1983, in which he alleged that his superiors fired him in violation of the First Amendment.

Khan began working in the Miami-Dade State Attorney's Office on August 12, 2002. Taking the facts in his complaint as true (as we must), see Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002), we will assume that he was fired in August 2004 as a result of three incidents that occurred that month. In the first incident, Khan refused to heed the directions of his direct supervisor Erika Isidron to tell a state trial judge that he was prepared to proceed to trial when he was not in fact ready. In the second incident, Khan objected after Isidron instructed him not to truthfully answer a judge's question about the existence of a prior plea offer in a criminal case. The complaint's allegations are a little unclear, but it appears that in both of these situations, Khan told the judge the truth—i.e., that he was not ready to proceed with trial and that there was a prior plea offer. In the third incident, Khan told a judge that he could not deliver a plea offer because his supervisors had been unavailable to meet with him.

In his complaint, Khan asserted official-capacity claims against chief

2

assistant state attorneys Kathleene Hoague (count I), Howard Pohl (count II), and Don Horn (count III), as well as Miami-Dade State Attorney Katherine Fernandez-Rundle (count IV). In particular, he alleged that each of these individuals acted pursuant to an official policy or custom of the State Attorney's office when they "allowed, condoned, encouraged, and tolerated" his termination for exercising his free speech rights and telling the court the truth. Khan also asserted claims against Isidron, Hoague, Pohl, and Horn in their individual capacities (count V), alleging that they each "participated in the punishment of Mr. Khan for his protected speech."

In the course of its proceedings, the district court entered two orders disposing of Khan's various claims. First, in a March 2006 order ruling on the defendants' motion to dismiss, the district court dismissed the individual-capacity claims. The court assumed that Khan had alleged a violation of his constitutional right to free speech, but concluded that Khan's supervisors were nevertheless entitled to qualified immunity on the ground that the violation was not clearly established at the time they fired him. In a subsequent order, however, the district court reasoned that a newly released decision of the Supreme Court, Garcetti v. Ceballos, ___ U.S. ___, 126 S. Ct. 1951 (2006) (decided May 30, 2006), warranted revisiting the assumption it had made in the earlier order about the

3

existence of a First Amendment violation. It concluded that Khan could not establish such a violation in the wake of Garcetti, and that as a result, the remaining official-capacity claims also had to be dismissed.

Khan appeals both of these orders. He also appeals a third order denying his motion to amend his complaint to include a claim against all of the individual defendants except Fernandez-Rundle for intentional infliction of emotional distress.

## I.

In Garcetti, the Supreme Court considered the case of a local prosecutor whose supervisors allegedly retaliated against him, in that case on the basis of a memorandum the attorney had written recommending dismissal of a pending criminal case. 126 S. Ct. at 1956. The Court analyzed the prosecutor's claim using its two-step analysis for public employee speech cases which asks first "whether the employee spoke as a citizen on a matter of public concern" and then, if so, "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id. at 1958.

The prosecutor's claim failed on the first of these two steps in light of the Court's holding that "when public employees make statements pursuant to their

4

official duties, the employees are not speaking as citizens for First Amendment purposes." Id. at 1960. This rule, the Court reasoned, was grounded in the agency relationship between the speaker and his government employer:

> Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created. Cf. Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 833, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) ("[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes.").

Id. When he wrote the memorandum in question, the Garcetti prosecutor had simply "[gone] to work and performed the tasks he was paid to perform." Id. And in such a situation, the Court wrote, the First Amendment does not stop government supervisors from supervising. Id. at 1961. The First Amendment "does not invest [government employees] with a right to perform their jobs however they see fit." Id. at 1960.

The holding in Garcetti means that Khan "can prove no set of facts which would allow [him] to prevail" on his First Amendment claims. Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005). Khan's in-court statements "owe[d] [their] existence" to his role as a government lawyer. Because Khan was not speaking as a citizen but as an assistant state attorney,

5

those statements were not entitled to protection under the First Amendment.

As he did before the district court, Khan advances two arguments that Garcetti does not require this result. These arguments are creative, but ultimately unpersuasive. We address each in turn.

A.

First, seizing on a single word in the Court's opinion, Khan frames the relevant inquiry as whether an employee was acting pursuant to his "expected" duties at the time of the speech in controversy. Since he says he was expected to lie whenever it was convenient to the state attorney's office, Khan says that he was not acting pursuant to his expected duties when he told the truth in derogation of his supervisor's instructions. The implication is that Khan therefore spoke to the court as a citizen entitled to First Amendment protection and not as a government employee acting pursuant to his official duties.

Khan's interpretation of Garcetti cannot be right. By focusing on the fact that he was acting outside his "expected" duties when he told the truth to the court, Khan in effect is asking us to recognize First Amendment protection for any employee who disobeys his employer's instructions. This approach is wholly at odds with the Garcetti Court's desire to avoid "permanent judicial intervention in the conduct of governmental operations" and we decline to embrace it. 126 S. Ct.

at 1961.

Moreover, Khan's singular focus on the word "expected" betrays a tortured reading of the Supreme Court's decision. Khan lifted that word "expected" out of a paragraph in which the Court decried the use of formal job descriptions as the overriding benchmark to determine when an employee is acting pursuant to his official duties. The Court wrote:

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

Id. at 1961–62. The Court made this point, however, only after noting that the parties had not disputed the prosecutor's official-duty status in writing the memo and cautioning that it therefore had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." Id. at 1961. That is to say, the Court itself explicitly refrained from placing the emphasis on supervisors' specific expectations that Khan says it placed.

What the Court did emphasize was whether the public employee was acting as an agent of the government at the time of the relevant speech. As we mentioned

earlier, the Garcetti Court's central concern was with speech that "owes its existence to a public employee's professional responsibilities." Id. Restricting speech of that sort, the Court said, "simply reflects the exercise of employer control over what the employer itself has commissioned or created." Id. Even Justice Souter recognized this basis for the Court's holding when he lamented in his dissenting opinion "the fallacy . . . that any statement made within the scope of public employment is (or should be treated as) the government's own speech." Id. at 1968 (Souter, J., dissenting). So while Garcetti does not provide us with a "comprehensive framework for defining the scope of an employee's duties," its reasoning tells us enough to decide this case. Id. at1961. Indisputably, Khan's truth-telling occurred while he was representing the state of Florida as an assistant state attorney in open court. He was therefore speaking as a public employee and not as a private citizen.

B.

Khan's other argument draws on the fact that unlike the Garcetti prosecutor who wrote a memorandum to his superiors, Khan was addressing a court at the time of the relevant speech. According to him, that fact implicates his obligations under Florida state bar rules not to mislead the court. See R. Regulating Fla. Bar 4-3.3 ("Candor Toward The Tribunal"). When his superior asked him to lie, Khan

says that he had to "abandon his duties as a State Attorney" and "act[] in the only capacity he was left with at the time: . . . as a private citizen regulated by the Florida Bar and as an officer of the Court."

The fact that Khan's speech occurred in a courtroom (and not in an internal memorandum) does not change the analysis required by Garcetti. When a lawyer speaks as an "officer of the court" he is necessarily speaking as his client's representative. Nothing in the relevant bar rules changes the fact that Khan's speech "owes its existence" to his role as the government's lawyer. 126 S. Ct. at 1960.

Although we are of course sympathetic to government employees whose ethical obligations bring them into conflict with their supervisors, the Garcetti Court was careful to note that there are protected avenues available for those employees wishing to resolve such conflicts. Id. at 1961–62. They could complain privately to their superiors, see Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 415,  99 S. Ct. 693, 696–97 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [the 'freedom of speech'] is lost to the public employee who arranges to communicate privately with his employer . . . ."), or even publicly, see Garcetti, 126 S. Ct. at 1961 (citing Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731 (1968)). Public employees in Florida

9

also can find protection under that state's whistle-blower statute. See Fla. Stat. § 112. 3187. But as the Garcetti Court put it, the First Amendment does not give government employees "a right to perform their jobs however they see fit." Id. at 1960.

Because Khan spoke pursuant to his official duties, he suffered no violation of his First Amendment rights. As a result, we must affirm the district court's entry of judgment against Khan as to all of his claims under 42 U.S.C. § 1983, official- and individual-capacity ones alike.

## II.

Khan also appeals the district court's denial of his motion to amend his complaint to include a claim for intentional infliction of emotional distress based on his supervisors' alleged conduct.

We cannot improve on the district court's order denying the motion. As that court noted, the standard for "outrageous conduct"—an essential element of Khan's proposed new claim—is "particularly high in Florida." Patterson v. Downtown Med. & Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994). The numerous decisions cited in the district court's opinion more than adequately show that the conduct Khan complains of does not meet that high standard. For that reason, we agree with the district court that Khan's amendment

10

would be futile.

**AFFIRMED.**