Kathleen **RAMEY** et al., Plaintiffs,

v.

**INTERSTATE FIRE AND CASUALTY COMPANY**, Defendant.

Case No. 12–CV–80857.

United States District Court, S.D. Florida, West Palm Beach Division.

Signed March 11, 2013.

Danya Pincavage, Stephen A. Marino, Jr., Ver Ploeg & Lumpkin, P.A., Miami, FL, for Plaintiffs.

Markham Richard Leventhal, Enrique Daniel Arana, Jonathan Phillip Hart, Jorden Burt LLP, Miami, FL, for Defendant.

### *AMENDED OMNIBUS ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS. DENYING PLAINTIFFS' MOTION TO AMEND, AND DISMISSING CASE WITH PREJUDICE*

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on Defendant's motion for judgment on the pleadings **[DE 17]** filed on October 31, 2012 and Plaintiff's motion to amend the complaint **[DE 19]** filed on November 16, 2012. The motions are fully briefed, and a hearing was held on February 21, 2013. The matter is ripe for adjudication.

## I. Background

Plaintiffs Kathleen Ramey and Douglas Wayne Ramey ("Plaintiffs") filed this action for common law bad faith against Defendant Interstate Fire and Casualty Company ("Interstate") to recover for medical injuries sustained from a negligently performed operation. The operation was performed by Dr. Andrew D. Weiss, an insured under Interstate's Physician & Surgeons Professional Liability Claims Made Insurance Policy (the "policy"). Plaintiffs previously sued Dr. Weiss in state court for medical malpractice, where a judgment was entered in favor of Plaintiffs against Dr. Weiss for $36,925,869.00. Plaintiffs now seek recovery of the "full amount of the judgment" from Interstate, claiming that it is required to indemnify Dr. Weiss under the terms of the policy.

Dr. Weiss was insured under Interstate's policy from February 16, 2000 to February 16, 2002 (the "policy period"). Under the policy, coverage was provided for certain claims made against Dr. Weiss and reported to Interstate during the policy period. In pertinent part, the first page of the policy states:

**THIS IS A CLAIMS MADE POLICY.**

. . . . . . . . . . . . . . .

**THE POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD UNLESS, AND TO THE EXTENT, THE EXTENDED REPORTING PERIOD OPTION APPLIES**

. . . . . . . . . . . . . .

### I. COVERAGE

The Company [Interstate] will pay on behalf of the **Named Insured** all sums which the **Named Insured** shall be legally obligated to pay as **Damages** for **Claims** first made against the **Named Insured** and reported to the Company during the **Policy Period,** arising out of **Bodily Injury** or **Property Damage** as a result of a **Medical Incident** . . . .

The policy defines a "claim" as a "demand for money, or the filing of a **Suit** naming the **Named Insured** and alleging a **Bodily Injury** or **Property Damage** as a result of a **Medical Incident.**"

On September 21, 2000, Dr. Weiss improperly administered a cervical epidural injection to Kathleen Ramey, causing her significant injuries. Following the procedure, Mrs. Ramey notified Dr. Weiss by telephone on September 27, 2000 that her injuries had worsened "as a result of [his] improperly performed [procedure]." The next day, on September 28, 2000, Dr. Weiss sent Interstate a letter providing "notice of [Mrs. Ramey's] incident." In the letter, he stated "there is no litigation pending," but that he wanted to keep his insurance agent informed. On October 24, 2000, Interstate responded to Dr. Weiss's letter, and advised him as follows:

> The information you have sent to us does not meet the definition of a Claim or Suit, and, as such, we regret we are unable to respond to this matter. Should you receive notice of a claim or a lawsuit, or any additional information which you feel would directly impact our decision, we invite you to promptly submit that information.

The letter cited the applicable policy provisions discussed above, and concluded that because "neither a **Claim** nor **Suit** has been instituted, we [Interstate] have not set up a claim file nor will we undertake any action at this time."

Subsequently, on October 25, 2000, Plaintiffs' counsel sent a letter to Dr. Weiss requesting copies of Mrs. Ramey's

medical records and an itemized bill. The body of the letter stated in full:

> Dear Dr. Farkas:
>
> Enclosed is a duly executed medical authorization regarding the captioned patient. Please forward to the undersigned:
>
> 1. An *itemized bill* for services rendered to this patient, together, with;
>
> 2. A *complete dark legible copy of your medical records (INCLUDE A COPY OF THE FRONT OF EVERY PIECE OF PAPER. AND THE BACK OF EVERY PIECE OF PAPER ON WHICH THERE IS WRITTEN, PRINTED OR STAMPED MATERIAL).*
>
> Recently enacted Florida Statutes, states, in relevant part: "Copies of any medical record relevant to any litigation of a medical negligence claim or defense shall be provided to a claimant or defendant, or to the attorney thereof, at a reasonable charge *within 10 business days of a request for copies.* It shall not be grounds to refuse copies of such medical records that they are not yet completed or that a medical bill is still owing."
>
> Your prompt reply will be appreciated. Please be advised that we will make payment therefore, in accordance with law, upon receipt of a bill for the copies furnished.
>
> Sincerely,
>
> Sheldon J. Schlesinger, P.A.

As alleged in the complaint, there were no further communications between Plaintiffs, Dr. Weiss, and Interstate prior to the close of the policy period.

On February 25, 2002, Plaintiffs sent Dr. Weiss a pre-suit notice of intent to initiate litigation. Dr. Weiss provided the notice to Interstate, but it denied coverage, stating that a claim was not reported during the policy period, and therefore, no defense or indemnification would be provided. Plaintiffs sued Dr. Weiss on September 20, 2002 in state court for medical malpractice, and after ten years of litigation, a judgment was entered in favor of Plaintiffs against Dr. Weiss personally in the amount of $36,925,869.00. Plaintiffs subsequently filed this action alleging a single claim for common law bad faith against Interstate. Specifically, Plaintiffs allege that Interstate breached its "duties to Dr. Weiss by wrongly denying a covered claim for damages."

Pursuant to Fed.R.Civ.P. 12(c), Interstate now moves for a judgment on the pleadings. Interstate argues that (1) a finding of coverage must be made before Plaintiffs' bad faith claim can be decided and (2) Plaintiffs' claim fails as a matter of law because the complaint demonstrates that no claim was made so as to trigger coverage under the policy. In response, Plaintiffs move to amend their complaint to abate their common law bad faith claim and proceed with a declaratory judgment action. Interstate contends, however, that any such amendment would be futile, as the facts alleged in the proposed amended complaint are virtually identical to those of the original complaint, and thus Plaintiffs fail to adequately allege a "claim" sufficient to trigger policy coverage.

In support of its motion, Interstate attaches various exhibits, some of which are referenced in the complaint. These exhibits include: documents from Dr. Weiss's bankruptcy proceedings; a criminal indictment and judgment against Dr. Weiss for distributing narcotics; settlement documents between Plaintiffs and Dr. Weiss's former employer; and pre-suit correspondence between Plaintiffs, Dr. Weiss, and Interstate, as discussed above. Plaintiffs assert that in review of Interstate's motion, the Court should ignore extrinsic evi-

dence and focus on the four corners of the complaint; to do otherwise would convert the motion into a motion for summary judgment. Interstate counters that the attached documents may be properly considered because they are undisputed and central to Plaintiffs' claims.

## II. Legal Standards

### A. Motion for Judgment on the Pleadings

Pursuant to Fed.R.Civ.P. 12(c), after the pleadings are closed, a party may move for judgment on the pleadings if no material facts remain at issue and the parties' dispute can be resolved on the pleadings and those facts of which the court can take judicial notice. *See* Fed.R.Civ.P. 12(c); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998). A motion for judgment on the pleadings "is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *In re Accutane Prods. Liab.*, 2011 WL 6224546, at *1 (M.D.Fla. Nov. 9, 2011). Thus, the Court accepts the factors in the complaint as true and views them in light most favorable to the nonmoving party. *Hawthorne*, 140 F.3d at 1370. However, a plaintiff's grounds for relief "requires more than labels and conclusions;" he must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

■■■■ Generally, a court must convert a motion for judgment on the pleadings into a motion for summary judgment if it considers materials outside the pleadings. Fed.R.Civ.P. 12(d). A court may, however, consider documents attached to a motion for judgment on the pleadings without converting it into one for summary judgment if the documents are (1) central to the plaintiffs claim and (2) their authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir.2005). In deter-

mining whether documents are "central" to a plaintiff's claim, courts conduct a fact-sensitive analysis, considering such factors as: whether the claims depend on the documents, *see Botero v. South Florida Pain & Rehabilitation Center Corp., Inc.*, No. 12–20924, 2012 WL 3614329, at *3 (S.D.Fla. Aug. 21, 2012); whether the contents of the documents are alleged in the complaint, *see In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999); or, whether the documents form a "necessary part of [the plaintiff's] effort to make out [his] claim." *Day*, 400 F.3d at 1276; *see e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir.2002) (ruling in a defamation case that an article in which the alleged defamatory statement was made was central to the plaintiff's claim). Generally, the extrinsic materials must either form the basis for the claim or be necessary to support the claim at issue. *See Orange Beach Dev. Group, L.P. v. Powers*, 2007 WL 1889814, at *3 (S.D.Ala. June 28, 2007).

### B. Motion to Amend

■■■■ Under Federal Rule of Civil Procedure 15, leave to amend pleadings should be freely given when justice so requires. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

## III. Discussion

### A. Consideration of Materials Outside the Pleadings

Interstate introduces a variety of extrinsic evidence in support of its motion. To

consider this evidence, the Court must generally convert the motion into one for summary judgment under Rule 56. As noted above, however, conversion is not necessary in all instances, particularly where the exhibits are: attached to or incorporated into the complaint, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); matters of public record, *see Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1280 (11th Cir.1999); or other materials subject to judicial notice. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1380 (11th Cir.2010).

■ Here, the Court declines to convert Interstate's Rule 12(c) motion into a motion for summary judgment. The Court finds that while some of Interstate's extrinsic materials are irrelevant, most of the exhibits are central to Plaintiffs' claims, undisputed, and otherwise properly considered by the Court at this stage. The Court, therefore, declines to consider documents from Dr. Weiss's bankruptcy proceedings, the criminal indictment and judgment against Dr. Weiss, or settlement documents between Plaintiffs and Dr. Weiss's former employer. These materials are not mentioned in the complaint, do not form the basis of Plaintiffs' claim, and are not relied upon Plaintiffs in any respect. The Court does consider, however, the pre-suit correspondence letters between Plaintiffs, Dr. Weiss, and Interstate. These correspondence letters are alleged in the complaint and relied upon by Plaintiffs as a necessary part of their effort to set forth a claim for coverage under the policy. Plaintiffs' action rises and falls upon whether a "claim" was made such that Interstate owed a duty to indemnify Dr. Weiss under the terms of the policy. The complaint, or amended complaint, contains no other allegations of communica-

tions between parties other than the correspondence letters and the September 21, 2000 phone call from Mrs. Ramey to Dr. Weiss complaining of her injuries. Thus, in reviewing the legal sufficiency of the Plaintiffs' action, the content of the letters is essential.

**B. The Legal Sufficiency of Plaintiffs' Claim for Relief**

■ The Court finds that the undisputed facts establish no claim was made under the policy. A review of the amended complaint demonstrates the same. Therefore, the Court finds that based on the facts alleged, Plaintiffs are not covered under the policy. Thus, the Court holds that Interstate is entitled to judgment as a matter of law and denies Plaintiffs' motion to amend the complaint as futile.

The policy at issue provides coverage for "Claims first made against the Insured [Dr. Weiss] and reported to the Company [Interstate] during the Policy Period." The policy defines a "claim" as a "demand for money, or the filing of Suit named the Named Insured." The complaint and proposed amended complaint (which, factually, is virtually identical) reference seven different communications between Plaintiffs, Dr. Weiss, and Interstate. Taken from the amended complaint, they are as follows:

12. Mrs. Ramey sustained immediate injuries and notified Dr. Weiss of the same.

13. On or about September 27, 2000 Mrs. Ramey called Dr. Weiss' office as the effects of the injury worsened and reiterated that she sustained injuries as a result of Dr. Weiss' improperly performed cervical epidural injection.

14. On September 28, 2000, Dr. Weiss informed his insurance agent in writing that a serious medical incident occurred

while he was operating on Mrs. Ramey, resulting in her hospitalization.

15. On October 25, 2000, Mrs. Ramey sent a letter to Dr. Weiss, enclosing a "duly executed medical authorization" requesting a legible coy of all relevant medical records and an itemized bill for services that had been rendered, suggesting an intention to seek reimbursement.

16. In response to Dr. Weiss' September 28, 2000 letter, Interstate asserted that the Policy is triggered only by an actual "Claim" or "Suit," and since neither a "Claim" nor "Suit" had been made, Interstate would not take any action at that time.

. . . . . . . . . . . . . . .

19. Dr. Weiss promptly provided the Notice [of intent to initiate a medical malpractice suit sent by Plaintiffs to Dr. Weiss on February 25, 2002] to Interstate.

20. Interstate denied coverage, asserting that the "Claim" was made after the expiration of the renewal Policy.

A review of these allegations demonstrates that Plaintiffs fail to plausibly allege the existence of a "claim". The facts show that Plaintiffs neither made a demand for money nor initiated a lawsuit within the policy period. Moreover, even if a claim was made, there are no facts to support that Interstate was notified of such during the policy period. Plaintiffs' lawsuit against Dr. Weiss was not initiated until after the policy period. Furthermore, mere speculation that Plaintiffs' October 25, 2000 letter suggests an intention to seek reimbursement is not enough. A notice of a potential claim does not constitute a demand for money and, thus, a "claim" under the policy. *See Myers v. Interstate Fire & Casualty Co.*, 2008 WL 276055, at *7 (M.D.Fla. Jan. 30, 2008) (finding that a

letter did not constitute a "claim" under a Physicians and Surgeons Liability Policy where the lawyer's "statement that he was retained to represent [the patient] in 'a claim for damages' was merely a notice of a potential claim, insufficient to trigger the insurer's duty to defend and indemnify"); *Aguilar v. Royal Surplus Lines Ins. Co.*, 2006 WL 2038643, at *12 n. 4 (Bankr. S.D.Fla. June 5, 2006) (explaining that a letter from a patient's attorney requesting medical records "was nothing more than a preparatory act to the possibility of making a claim").

■ Where a policy is clear and unambiguous, the Court must give effect to its plain language. *See Myers*, 2008 WL 276055 at *3. Here, the Court finds the bold, capitalized print stating **"THE POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD"** to be clear and unambiguous. Therefore, the Court interprets the policy as requiring a demand for money or lawsuit and the notification thereof to Interstate during the policy period. An examination of the letters and communications alleged provide no support that a "claim" was made, either by demand for money or lawsuit, between the dates of February 16, 2000 to February 16, 2002. As explained above, even if, as Plaintiffs contend, the October 25, 2000 letter from Plaintiffs' counsel to Dr. Weiss constituted a demand for money, it was not reported to Interstate, and therefore fails to satisfy the policy's prerequisites to coverage. The only alleged report made to Interstate during the policy period was Dr. Weiss's September 28, 2000 letter, in which Dr. Weiss states that there "is no litigation pending" and which makes no reference to a demand for money. Thus, Plaintiffs fail

to overcome the two-part hurtle of (1) making a claim and (2) demonstrating that a claim was reported to Interstate, each within the policy period.

Based on the foregoing, granting Plaintiffs leave to file their proposed amended complaint would be futile. The amended complaint, from which the excerpted portions of Plaintiffs' allegations were taken, provides no factual allegations to support a finding that a "claim" was made under the policy so as to trigger coverage. Plaintiffs argument that discovery is needed to determine whether verbal demands for money were made to Dr. Weiss is unavailing. The amended complaint does not allege Plaintiffs made a verbal demand for money, or what is more, it does not contain allegations that such a demand was reported to Interstate. Therefore, the Court finds that no factual allegations are in dispute and Interstate is entitled to judgment as a matter of law.

## IV. Conclusion

The Court has carefully considered the motions, responses, replies, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that
1. Defendant Interstate Fire and Casualty Company's motion for judgment on the pleadings **[DE 17]** is **GRANTED;**
2. Plaintiffs Kathleen and Douglas Wayne Ramey's motion to amend the complaint **[DE 19]** is **DENIED;** and
3. This action is **DISMISSED WITH PREJUDICE.**

The Clerk of Court is directed to **CLOSE** this case and **DENY** any pending motions as **MOOT.**